JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Edmund Sadowski ("Edmund") appeals various aspects of the trial court's judgment entry and divorce decree. After a thorough review of the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} On December 17, 2003, appellee Nada Sadowski ("Nada") filed a complaint for divorce from her husband, Edmund. Edmund filed his answer and counterclaim on February 12, 2004. Nada cited incompatibility as the reason for the divorce, which Edmund failed to deny in his answer. The trial court ultimately found that Nada was entitled to a divorce.
 {¶ 3} Edmund and Nada were married on December 12, 1989 and had two children. There was a good relationship between the two early in the marriage; however, by December 1997, Edmund's mother, sister, and two nieces had moved into the house. The living arrangements began to strain the marriage. Most notably, the two argued over child rearing and household management.
 {¶ 4} On July 29, 2004, the trial court issued a temporary support order, which provided that Edmund was to pay the house mortgage, real estate taxes, homeowner's insurance, and all utilities. Edmund was also responsible for health insurance, credit card payments, and car expenses. Nada was responsible to pay the food expenses for the household. Both parties continued to reside in the home throughout the litigation. *Page 4 
 {¶ 5} Edmund failed to follow the court's orders. He allowed the home to go into foreclosure. Also, several times Edmund failed to pay utility bills, which resulted in services being turned off. At one point, the family went without heat for an entire month.
 {¶ 6} On September 17, 2006, the trial court adopted the magistrate's June 15, 2006 decision. The trial court designated Nada as the residential parent and legal custodian of their two minor children.
 {¶ 7} Appellant filed his notice of appeal on October 26, 2006. He asserts twelve assignments of error for our review.
 {¶ 8} The standard of review for domestic relations cases is to determine whether the trial court abused its discretion in reaching its judgment. Booth v. Booth (1989), 44 Ohio St.3d 142, 542 N.E.2d 1028. "This is true in cases reviewing an order relating to alimony, a division of the marital property, or a custody proceeding. Since it is axiomatic that a trial court must have discretion to do what is equitable based upon the facts and circumstances of each case, it necessarily follows that a trial court's determination in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." Id. at 144. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberly v. Hendricks (1994), 98 Ohio App.3d 839, 845,649 N.E.2d 1247.
 {¶ 9} The Ohio Supreme Court has explained as follows: *Page 5 
 {¶ 10} "`An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination, made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias.'" Id. at 845-846, quoting Huffman v. Hair Surgeons, Inc. (1985),19 Ohio St.3d 83, 87.
 {¶ 11} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 50 OBR 481,450 N.E.2d 1140.
 Allocation of Parental Rights {¶ 12} "I. The trial court erred and abused its discretion in its determination of the allocation of parental rights and responsibilities of the parties' minor children."
 {¶ 13} Edmund argues that the trial court erred in determining parental responsibilities for the children. More specifically, he argues that the trial court erred by failing to order shared parenting, failing to designate appellant as the residential parent and legal custodian of the children, and ordering parenting time that is not conducive to the parties' schedules. We disagree.
 {¶ 14} The magistrate named Nada as the residential and custodial parent of the children, Tarek and Dana. Under R.C. 3109.04(A)(1), if "no plan for shared *Page 6 
parenting is in the best interest of the children, the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents * * *."
 {¶ 15} The magistrate found that shared parenting is not in the best interest of the children in this case. Under R.C. 3109.04(F)(2)(a), a primary factor to be considered when determining whether shared parenting is in the best interest of the children includes "the ability of the parents to cooperate and make decisions jointly."
 {¶ 16} The magistrate found that the parents do not cooperate on joint decisions regarding the children. Both parties continually argue over the children's nutrition. Nada wants to feed them herself, but Edmund would like his own mother to be in charge of food preparation. Nada is concerned over the amount of time the children spend with Edmund's sister, Maria. Tarek goes to her home to be tutored because Edmund feels that Nada is not competent to help him with his homework. Both children also spend a lot of time at Maria's home playing with their cousins. Nada would like the children to meet outside friends, but Edmund is content with the children playing only with their cousins. A corollary to this problem is the fact that Nada and Maria got into a physical altercation at one point, which resulted in Nada's arrest and a plea of no contest.
 {¶ 17} There was a myriad of testimony from both parties in this case. According to the magistrate, "what has developed in the testimony is a pattern that each party accuses the other of something they are either equally guilty of or only *Page 7 
guilty of (sic)." Nada and Edmund both claim they each feel they are always right. While Nada admitted she sometimes has difficulty admitting when she is wrong, Edmund continues to insist he is in fact always right.
 {¶ 18} Both parties constantly fought over the proper approach to the children's homework. To prove that Nada is incapable of helping Tarek with his school work, Edmund decided to test Nada's tutoring abilities. He helped Tarek with his homework during the 2005 fall semester, after which he stopped helping him and had Nada help him during the second semester. Although Tarek's grades dropped during the second semester, the magistrate found it was most likely due to the result of another area of dispute between the parties. During the fall, Tarek had been taking medication for attention deficit disorder, but Edmund demanded he discontinue the drug, despite doctor recommendations. The magistrate found that the changes in Tarek's grades could have been due to the discontinuance of the medication rather than Nada's tutoring skills.
 {¶ 19} Nada and Edmund also had a dispute regarding Dana. Nada wanted her daughter's ears pierced, but Edmund disagreed. However, once the divorce proceedings began, he permitted Dana to have her ears pierced without consulting Nada. The magistrate found that this was yet another example of the "one-upmanship behavior" of the parents, which had nothing to do with the children's needs. *Page 8 
 {¶ 20} Edmund argues that the magistrate made her decision regarding custody based upon an unreliable report by Dr. Karen Bardenstein. This argument is without merit. Edmund requested that an independent psychologist make a custody evaluation, and both parties agreed to hire Dr. Bardenstein, with the understanding that Edmund would pay for her services. Later, Edmund did not like her findings and refused to pay for the written report. The magistrate found that the report contained numerous problems and was only useful as a means of corroborating testimony.[1] Clearly, based on the magistrate's findings, the magistrate did not make her decision based on Dr. Bardenstein's report.
 {¶ 21} The magistrate determined which parent would more likely honor the court's approved visitation. She found that Nada had attempted to share the children throughout the litigation. However, Edmund, despite knowing that his wife and sister do not get along, included his sister in nearly all activities with the children. By doing so, he effectively excluded Nada from participating. He has even told the children that it is Nada's fault the family will be broken up. The magistrate found that Edmund has a problem with following orders and would be less likely to comply with court custody orders. *Page 9 
 {¶ 22} Clearly, the parties agree about very little concerning the children, and the list of disputes is nearly endless. As a result of the above findings, the magistrate ultimately found that shared parenting is not in the best interest of the children because the parties cannot "cooperate constructively on decision making." The magistrate also found, for many reasons as noted above, that Nada should be the custodial parent.
 {¶ 23} While Edmund mentions that the trial court erred regarding the custody schedule, he fails to address that issue in this assignment of error. Without an explanation of the conflicts in his schedule, we cannot address that issue. Because the schedule ordered by the court is a standard schedule, which is often used to schedule parental visitation, we find no merit to Edmund's contention that it is unfair or problematic.
 {¶ 24} It is clear that the parties cannot jointly make decisions regarding the children's welfare. Edmund's behavior toward his wife and children has been suspect throughout the marriage and trial. As a result of these findings, the magistrate awarded Nada custody of the minor children. Because the court's custodial decisions, based on the facts, were not unreasonable, arbitrary, or unconscionable, appellant's first assignment of error is overruled.
 Child Support *Page 10 {¶ 25} "II. The trial court erred and abused its discretion in the calculation of the appellant, Edmund Z. Sadowski's child support obligation and in imputing income to the appellant, Edmund Z. Sadowski."
 {¶ 26} Edmund argues that the trial court erred in imputing income to him for the purpose of calculating his child support obligation. More specifically, he argues that an estimated earnings potential of $75,000 is too high. We find his argument to be without merit.
 {¶ 27} The test for imputing income has two parts. The first part requires that Edmund be voluntarily underemployed or voluntarily unemployed. R.C. 3119.01(C)(11). The second part requires an analysis of further statutory factors set out under R.C. 3119.01(C)(11)(a). The magistrate determined that it would be proper to impute income to Edmund for purposes of calculating child support and spousal support.
 {¶ 28} The magistrate found that Nada began working as a teacher part-time in 2001. Her gross income has steadily increased since then and reached a high of $17,903 for the 2005-2006 school year. Edmund is a board certified doctor, who testified that his average gross income should be calculated at $50,000-$60,000 this year. However, the magistrate found that his earnings in previous years included: $103,511.24 (1994); $90,000.04 (1995), $90,00.00 (1996); $67,392.88 (1997); $94,970.00 (1999); $79,424.11 (2000); $78,447.20 (2001); and $75,819.63 (2002). *Page 11 
There is a discrepancy over his income for 2003 because one W-2 states $32,931.19, while an employer's copy indicates $28,249.14.[2]
 {¶ 29} The magistrate found that, throughout this litigation, Edmund has not been forthcoming with discovery requests for his income, expenses, and receivables. The magistrate found that from 2003 through 2005, Edmund was voluntarily underemployed (mostly due to his desire to spend more time at home). His income declined significantly after Nada filed for divorce. While Edmund is currently self-employed, he had a business relationship in the PTS Medical Group, which he has since terminated. Based on these findings, the magistrate found that Edmund was voluntarily underemployed.
 {¶ 30} The magistrate analyzed the various factors under R.C.3119.01(C)(11)(a) and noted findings regarding the following in her report:
 {¶ 31} (i) The parent's prior employment experience: Edmund earned between $75,000 and $79,000, average per year in the three years before the divorce. He earned much more than that in the five years before 2000.
 {¶ 32} (ii) The parent's education: Edmund is a board certified physician.
 {¶ 33} (iii) The parent's physical and mental disabilities, if any: Edmund had no known physical or mental disabilities that would prevent him from working full time. *Page 12 
 {¶ 34} (iv) The availability of employment in the geographic area in which the parent resides: Edmund had been employed in the area for ten years, and he was able to work more hours when the family needed more money.
 {¶ 35} (v) The prevailing wage and salary levels in the geographic area in which the parent resides: The magistrate found that this factor would be the best indicator of Edmund's income. She found that Edmund has earned about $100,000 per year through 2000, and at least $75,000 a year since 2000. Finally, the magistrate found that wages for board certified physicians should increase over time.
 {¶ 36} (vi) The parent's special skill and training: Edmund is board certified in internal medicine and is a licensed physician in Ohio.
 {¶ 37} (vii) Whether there is evidence that the parent has the ability to earn the imputed income: Edmund can make at least $75,000 a year because he made at least that much for every year before the divorce.
 {¶ 38} (viii) The age and special needs of the children: The children's ages do not require that Edmund work less hours. Both Nada and Edmund's sister are available to help tutor Tarek.
 {¶ 39} (ix) The parent's increased earning capacity because of experience: Edmund has increased earning capacity due to his experience as a licensed doctor and a board certified physician.
 {¶ 40} It is important to note that Edmund attributes his lower salary to marital problems and the fact that he would like to spend more time with his family. As the *Page 13 
magistrate found, the children do not require their father to stay home with them, therefore, Edmund should be earning his full potential. Nevertheless, in his favor, the magistrate's imputed amount is a conservative estimate of his potential earnings.
 {¶ 41} Based on the foregoing findings, the magistrate found that a $75,000 income should be imputed to Edmund. Because the court's decision to impute income to Edmund was not unreasonable, arbitrary, or unconscionable, appellant's second assignment of error is overruled.
 Tax Dependency Exemptions {¶ 42} "III. The trial court erred and abused its discretion in awarding the tax dependency exemptions for the minor children to the appellee, Nada Sadowski."
 {¶ 43} Edmund argues that the trial court erred in awarding the tax dependancy exemptions to Nada. More specifically, he contends that the court made insufficient findings to support its award of the exemption to Nada, and it should have awarded the exemptions to him. We find this argument to be without merit.
 {¶ 44} Traditionally, the exemption is given to the custodial parent in order to provide a net tax savings for the family that would be in the best interest of the children. Singer v. Dickinson (1992),63 Ohio St.3d 408, 588 N.E.2d 806. The magistrate considered "the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, and the *Page 14 
eligibility of either or both parents for the federal earned income tax credit * * *." As a result, the magistrate awarded the exemption to Nada.
 {¶ 45} The magistrate found that if Edmund earned more than $75,000, he is phased out of the $1,000 "under 17" child credit. Finally, his failure to comply with the court's monetary orders proves that he would most likely not comply if he were ordered to reimburse Nada with part of the refund.[3] In its judgment entry, the trial court explicitly agreed with the magistrate:
 {¶ 46} "Based upon all the circumstances of this case, it is more likely that Plaintiff would use the funds for the benefit of the minor children, and the additional funds are more necessary to maintain an adequate standard of living in Plaintiff's household."
 {¶ 47} Clearly, the trial court agreed with the exemption award because it would benefit the children. Because the court's award of the tax exemption to Nada was not unreasonable, arbitrary, or unconscionable, appellant's third assignment of error is overruled.
 Division of Property {¶ 48} Because assignments of error IV, V, and VI are substantially interrelated, they will be addressed together. *Page 15 
 {¶ 49} "IV. The trial court erred and abused its discretion in the overall division of property, pursuant to Ohio Revised Code Section3105.171.
 {¶ 50} "V. The trial court erred and abused its discretion in the division of personal property.
 {¶ 51} "VI. The trial court erred and abused its discretion in failing to divide the appellee's SERS account by a division of property order (DOPO)."
 {¶ 52} Edmund argues that the trial court abused its discretion in the division of property. We do not agree. Under R.C. 3105.171(C), the trial court must divide all marital property equally, unless an equal division would be inequitable. If the court finds that "a spouse has engaged in financial misconduct * * * the court may compensate the offended spouse * * * with a greater award of marital property." R.C. 3105.171(E)(3).
 {¶ 53} The magistrate found that an equal distribution of the marital property (which mostly included the marital home, Edmund's retirement account, and Nada's SERS retirement account) would be inequitable in this case because of Edmund's financial misconduct regarding his disposition of some of the marital property.
 {¶ 54} Edmund withdrew marital funds before and during litigation. He transferred $34,985 from Northwest Mutual Life Insurance to his Edward Jones Single Account. He then withdrew $30,605.72 from that account, leaving only $4,373.74 as of November 2003. Out of that money, Edmund received $20,000, *Page 16 
$6,315.96 went to Countrywide Home Loans, $3,452.76 went to the law offices of Charles E. Soffa, and $837 went to Reassure America Life.
 {¶ 55} In December 2003, another check for $3,102.09 was sent to Countrywide Home Loans. On January 5, 2004, a check for $1,100 was issued to Edmund. There was also a check issued to Edmund from the Edward Jones Profit Sharing Account for $15,000 on January 8, 2004. Including that check, Edmund received a grand total of $36,100 from the Edward Jones accounts.
 {¶ 56} There were other checks, totaling $37,300, made payable to cash and to Edmund's sister, Maria, from the Ohio Savings Bank account. Maria testified that Edmund was just using her account for his money. Edmund provided a belated explanation that the money from the Ohio Savings account was the same money from the Northwest Mutual Life Insurance account. Although the magistrate found his explanation plausible, she was troubled that Edmund provided no proof.
 {¶ 57} Edmund was ordered to explain the above transactions, and restraining orders were put in place on the money.[4] Edmund argued that the divorce action commenced on December 17, 2003, but he was not served until January 7, 2004. He contends that, because of this, any withdrawals before January 7, 2004 could not be considered misappropriated funds. However, even after receiving the restraining *Page 17 
order, he withdrew $14,500, which he gave to Maria. Clearly, Edmund continued to misappropriate funds and refused to give explanations. When he did offer explanations, he advised the court that the money was used for marital expenses; however, the mortgage and utilities (marital expenses) were in arrears, making Edmund's explanations suspect. Accordingly, the magistrate charged $36,100 in marital assets against Edmund.
 {¶ 58} The magistrate found that, at the start of litigation, the marital home had equity of $37,374, and the equity could have been higher had Edmund paid the mortgage. As a result of that finding, the magistrate found it equitable to use that sum as the value to be divided.
 {¶ 59} In addition, the magistrate found that the PTS Medical Group profit sharing account was valued at $109,804. The Edmund Sadowski, M.D., L.L.C. was valued at $3,901. The magistrate valued Nada's SERS retirement account at $6,777.84.
 {¶ 60} Other factors cited by the magistrate in relation to division of the property include Edmund's failure to pay the mortgage, his voluntary underemployment, and his refusal to follow court orders regarding the account assets. *Page 18 
 {¶ 61} The magistrate made the following findings regarding Nada's SERS retirement account. Nada's interest in her SERS benefits had not yet vested. Edmund did not perform any discovery regarding the SERS account — the court was only aware that Nada had an SERS retirement account. Since Edmund was responsible for establishing the value and did not do so, the court found it equitable to award the SERS account to Nada.
 {¶ 62} Again, division of property is within the trial court's discretion. The trial court did not have to equally divide the property because it was inequitable to do so. The magistrate found that it would be equitable to award Nada's SERS retirement account to her. In light of the facts and circumstances of this case, that decision was not unreasonable, arbitrary, or unconscionable.
 {¶ 63} Overall, the magistrate found the division of property to besubstantially equal.[5] Any of the money missing from Edmund's share is attributed to his behavior of misappropriation of funds.
 {¶ 64} Edmund also argues that the division of personal property, such as the home's furnishings, was improper in light of the fact that Nada was not awarded the house. Further, Edmund assumes that "the trial court mistakenly awarded such *Page 19 
property to [Nada] when it intended to list [Edmund's] name as receiving the personal property and household furnishings." Further, Edmund argues that Nada received all the liquid assets, nearly all the retirement assets, and the contents of the house; whereas he was awarded an empty house, which is in foreclosure. The magistrate made her findings and divided the property, taking into consideration Edmund's financial misconduct. It was his conduct that resulted in the foreclosure and money taken out of the accounts.
 {¶ 65} Because of Edmund's financial misconduct, the magistrate found an equal division of property would not be equitable; however, the division was still substantially equal. Therefore, because the court's division of marital property was not unreasonable, arbitrary, or unconscionable, appellant's fourth, fifth, and sixth assignments of error are overruled.
 Payment of Costs {¶ 66} Because assignments of error VII and VIII are substantially interrelated, they will be addressed together.
 {¶ 67} "VII. The trial court erred and abused its discretion in ordering the appellant, Edmund Z. Sadowski, to pay the entire cost of the third-party court reporters, involved in transcribing the case (after regular court hours). *Page 20 
 {¶ 68} "VIII. The trial court erred and abused its discretion in ordering the appellant, Edmund Z. Sadowski, to pay the costs for Dr. Karen Bardenstein's attendance at court on February 17, 2006 and February 23, 2006."
 {¶ 69} Edmund argues that the trial court erred in ordering him to pay the fees for the court reporter and Dr. Bardenstein. More specifically, he alleges that he should not be responsible for the entire amount owed Rua Reporting Service. Further, he contends he should not have to pay more than half of the costs for Dr. Bardenstein's "less than competent performance." We find his arguments to be without merit.
 {¶ 70} Civ.R. 54(D) grants the court power to assess court costs. "By being involved in court proceedings, any litigant, by implied contract, becomes liable for the payment of court costs * * *." Strattman v.Studt (1969), 20 Ohio St.2d 95, 253 N.E.2d 749. Clearly, court reporter fees would fall into the definition of court costs. First, the court must determine if the expense is personal to one litigant or is a general litigation expense. Secondly, the court must determine if the expenses should be awarded as a cost of the case. Jones v. Pierson (Aug. 6, 1981), Cuyahoga App. No. 42309.
 {¶ 71} The court reporter fee is clearly a general litigation expense because both parties benefit from the service. In this case, private court reporters were hired because the hearing was held outside of court business hours. This was due primarily to Edmund's counsel's schedule. Therefore, it was not unreasonable for *Page 21 
the court to order that Edmund pay the fees. Because the court's decision was not unreasonable, arbitrary, or unconscionable, it was in the court's discretion to order Edmund to pay the court reporter costs.
 {¶ 72} Edmund was also ordered to pay Dr. Bardenstein's fee. Initially, it was Edmund who requested the appointment of Dr. Bardenstein to provide testimony. Edmund paid the retainer for the expert, but then later refused to pay anything more because he was dissatisfied with the expert's opinion. Nada had to pay for the report as well as the fee for Dr. Bardenstein's April 27, 2005 court appearance. Now Edmund wants Nada to pay one-half of the remaining costs incurred during his February 17 and 23, 2006 cross-examination of Dr. Bardenstein. Because Edmund requested the expert, and the expenses involve his own cross-examination of the expert, we find that the trial court did not abuse its discretion in ordering Edmund to pay the costs. Accordingly, appellant's seventh and eighth assignments of error are overruled.
 Spousal Support {¶ 73} "IX. The trial court erred and abused its discretion by awarding spousal support to the appellee, Nada Sadowski."
 {¶ 74} Edmund argues that the trial court abused its discretion by awarding spousal support to Nada. More specifically, he argues that the court did not properly consider the factors enumerated in R.C.3105.18(C)(1), which are used to determine the amount of spousal support to be awarded. We disagree and address each of *Page 22 
those factors in turn, as they were analyzed and noted by the magistrate in her report.
 {¶ 75} "(a) The income of the parties * * * including * * * income derived from property * * *." The magistrate found that "neither party will have current income from the property divided * * *."
 {¶ 76} "(b) The relative earning ability of the parties." The magistrate found that Nada would make $17,903 for the 2005-2006 school year and that she was attending classes to obtain her master's degree; Edmund, as a board certified physician, should have a $75,000 salary imputed to him.
 {¶ 77} "(c) The ages and the physical, mental, and emotional conditions of the parties." The magistrate found that Nada was 43 years old and Edmund was 55 years old; both are in good physical and mental health.
 {¶ 78} "(d) The retirement benefits of the parties." The magistrate ordered that most of the retirement benefits be awarded to Nada.
 {¶ 79} "(e) The duration of the marriage." The parties were married for 15-1/2 years.
 {¶ 80} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home." The magistrate found that the age and development of the children would not make it inappropriate for either party to work outside the home. *Page 23 
 {¶ 81} "(g) The standard of living of the parties established during the marriage." The magistrate found that the parties maintained a middle-class standard of living during the marriage.
 {¶ 82} "(h) The relative extent of education of the parties." The magistrate found that Nada graduated from college and is working toward obtaining a master's degree; Edmund is a board certified physician.
 {¶ 83} "(i) The relative assets and liabilities of the parties, including, but not limited to any court-ordered payments by the parties." This factor is discussed throughout the various analyses of the assignments of error of this opinion.
 {¶ 84} "(j) The contribution of each party to the education, training, or earning ability of the other party * * *." The magistrate found that Nada did not contribute to Edmund's education, but that Edmund has contributed "partially" to Nada's master's degree program.
 {¶ 85} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment * * *." The magistrate found that Nada is continuing her education and needed 45 class hours to finish her master's degree (expected to be completed by 2007 or 2008).
 {¶ 86} "(l) The tax consequences, for each party, of an award of spousal support." The magistrate found that "judicial notice is taken that an award of *Page 24 
spousal support would be taxable for [Nada] and an adjustment to the income of [Edmund]."
 {¶ 87} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities." The magistrate found that Nada's lost income under this factor is great because she remained at home for nearly ten years to care for the children.
 {¶ 88} The most significant factors show that Nada has a significantly lower income, has a considerable amount of lost income due to years of child rearing, and is continuing her education to obtain a master's degree. After considering all of the factors under R.C. 3105.18(C)(1), the magistrate found that it was equitable to award Nada spousal support in the amount of $1,000 a month for 60 months. After a review of those same factors, we find that the magistrate's decision was not unreasonable, arbitrary, or unconscionable. Accordingly, appellant's ninth assignment of error is overruled.
 Attorney's Fees {¶ 89} "X. The trial court erred and abused its discretion by awarding attorney fees as additional spousal support for the appellee, Nada Sadowski."
 {¶ 90} Edmund argues that the trial court abused its discretion by awarding attorney's fees to Nada. More specifically, he argues that because the evidence shows she could afford to pay her own attorney's fees, she should pay them. We find this argument to be without merit. *Page 25 
 {¶ 91} The award of attorney's fees is within the discretion of the trial court. Schultz v. Schultz (1996), 110 Ohio App.3d 715,675 N.E.2d 55. The crux of Edmund's argument is that, because Nada can afford to pay the fees, he should not have to. There is no evidence to show that, because Nada has paid some fees, she can afford to pay the entire amount. Further, this argument is contrary to case law. "A trial court decision to award * * * attorney fees should not take into consideration the factors of R.C. 3105.18; specifically the earning abilities of the parties and the relative assets and liabilities of each." Birath v.Birath (1988), 53 Ohio App.3d 31, 558 N.E.2d 63. Under R.C. 3105.73(A):
 {¶ 92} "In an action for divorce * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors * * *."
 {¶ 93} The magistrate found that Nada incurred attorney's fees of $26,666.15, which did not include fees she had already paid. Edmund's behavior was a significant factor in the amount of fees Nada accrued. He repeatedly disobeyed court orders and caused litigation delays. As a result of these findings, the magistrate granted Nada $15,000 in attorney's fees. Because the award of attorney's fees was not unreasonable, arbitrary, or unconscionable, appellant's tenth assignment of error is overruled. *Page 26 
 Contempt and Sanctions {¶ 94} "XI. The trial court erred and abused its discretion in failing to grant the appellant Edmund Z. Sadowski's motion for direct contempt and award sanctions and attorney fees for the appellee's blatant misrepresentations to the trial court."
 {¶ 95} Edmund argues that the trial court erred when it failed to hold Nada in contempt of court regarding her role in the placement of a GPS device on his car. We do not agree.
 {¶ 96} On April 24, 2006, Edmund filed a motion for finding of direct contempt of court against Nada and a motion for sanctions. Edmund argued that Nada was in contempt because she misled the court regarding her role in the placement of a GPS device on his car. According to Nada, her brother hired an investigator because he believed Edmund was having an affair. The magistrate found:
 {¶ 97} "Plaintiff has some issues in that, when she was confronted with the GPS device which Defendant found on his automobile, she denied having any knowledge of that item, although she had, with her brother, hired an investigator to plant the GPS on the Defendant's automobile. Therefore, her veracity was called into question at least to this issue. * * *"
 {¶ 98} While the magistrate did find that Nada's veracity was called into question because of the GPS situation, the magistrate also pointed out that Nada was more willing than Edmund to be honest about herself and her shortcomings. Edmund refused to admit he had any shortcomings. *Page 27 
 {¶ 99} The trial court declined to consider the motion stating, "all pending motions are resolved herein or are hereby rendered moot." If a party's contemptible action does not impede the administration of justice, then the party cannot be held in contempt. Fawick Airflex Co.v. United Electrical, Radio Machine Workers of America (Mar. 6, 1950), Cuyahoga App. No. 21497. The magistrate did not find that Nada's actions impeded the administration of justice. The magistrate took the event into consideration, along with all other factors, in making her determinations. "Misrepresentations to the court do not constitute a fraud on the court unless the adverse party was prevented from presenting a defense." Hartford v. Hartford (Aug. 18, 1977), Cuyahoga App. No. 36400. Edmund was able to present his case despite Nada's mistruths. Accordingly, appellant's eleventh assignment of error is overruled.
 Adoption of Magistrate's Decision {¶ 100} "XII. The trial court erred by adoption of the magistrate's decision without entering its own judgment on the issues."
 {¶ 101} Edmund argues that the trial court did not undertake a thorough independent review of the magistrate's decision. As proof on this matter, Edmund contends that since only nine days passed between Nada's response to Edmund's objections and the trial court's journal entry, the trial court must not have truly reviewed the magistrate's decision. We find this argument to be without merit. *Page 28 
 {¶ 102} When a trial court reviews a magistrate's decision, it must, as the ultimate finder of fact, make its own factual determinations through an independent analysis of the issues. Inman v. Inman (1995),101 Ohio App.3d 115, 655 N.E.2d 199. The magistrate's decision was rendered on June 15, 2006. Edmund filed his objections on June 28, 2006 and his supplemental objections on September 5, 2006. Nada filed her response on September 18, 2006. The court's judgment entry was dated September 27, 2006. The court had Edmund's objections for four months and his supplemental objections for three weeks. There is no reason to suspect that the trial court could not sufficiently review the record within those time constraints. Accordingly, appellant's twelfth assignment of error is overruled.
 {¶ 103} Judgment is hereby affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and ANN DYKE, J., CONCUR
[1] The magistrate found numerous problems with the report. 1. It was over two years old by the time she was cross-examined because of several delays. There were many delays in this case due mostly to defense counsel's scheduling conflicts. 2. There were some "unique approach[es]" used in the preparation of the report. 3. Fact information sheets used in preparation of the report were filled out improperly by the parties. 4. Dr. Bardenstein determined "best interest" factors, which the magistrate found to be the court's duty, not hers.
[2] The court had no information regarding appellant's income for 1998, 2004, and 2005.
[3] See the analysis of assignments of error IV, V, and VI for discussion regarding Edmund's history of failure to comply with the court's monetary orders.
[4] Edmund was restrained from "borrowing against, withdrawing, encumbering, transferring, removing or otherwise disposing of [Edmund's] investments, checking account, or savings accounts." He was also restrained from "assigning, transferring, cancelling, encumbering, removing or sharing the benefits or otherwise disposing of life or health insurance and he was restrained from incurring any debt in [Nada's] name."
[5] Nada was awarded $6,777.89 (from her SERS retirement account) and $94,804 (from Edmund's PTS profit sharing account). Nada's share totaled $101,582.00. Edmund was awarded $15,000 (from his PTS profit sharing account); $36,100 (in withdrawn marital funds); $5,015 (Huntington IRA); $3,901 (his L.L.C. account); and $37,374 (the equity in the marital home). Edmund's share totaled $97,390. *Page 1