[Cite as *Kinas v. Kinas*, 2013-Ohio-3237.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98965

## AUDRIE O. KINAS

PLAINTIFF-APPELLANT

vs.

## STEVEN W. KINAS

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-334547

**BEFORE:** Blackmon, J., S. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** July 25, 2013

**ATTORNEY FOR APPELLANT**

Anne C. Fantelli
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114

**ATTORNEY FOR APPELLEE**

Michele M. Lazzaro
Lazzaro and Kraus
25700 Science Park Drive
Suite 250
Beachwood, Ohio 44122

**GUARDIAN AD LITEM**

Sheila A. Duffy
29691 Lorain Road
North Olmsted, Ohio 44070

PATRICIA ANN BLACKMON, J.:

**{¶1}**  Appellant Audrie O. Kinas ("mother") appeals the trial court's decision designating Steven W. Kinas ("father") as the residential parent and assigns the following three errors for our review:

> **I.  The trial court erred and/or abused its discretion by designating the appellee as the residential parent and legal custodian of the minor children.**
>
> **II.  The trial court erred and/or abused its discretion by failing to grant the appellant's motion for continuance of the trial.**
>
> **III.  The trial court erred and/or abused its discretion by denying appellant's Exhibit 11 admission into evidence.**

**{¶2}**  Having reviewed the record and pertinent law, we affirm the trial court's decision.  The apposite facts follow.

### Facts

**{¶3}**  The parties were married on August 25, 2001.  Two children were born of the marriage. (N.K., DOB: Mar. 14, 2004, and A.K., DOB: Apr. 26, 2006.)

**{¶4}**  On December 14, 2010, the mother filed for divorce.  After continuing the matter several times, the trial was conducted on October 13, 2011, July 11-13, 2012, and July 16, 2012.[1]

---

[1] The trial transcript also had evidence of the parties' financial matters. However, because the focus of the instant appeal is the custody of the children, we will not address the evidence concerning the parties' finances.

**{¶5}** The record shows that the marriage had problems from the start. The mother testified that the father restricted her access to their money accounts and placed her on a curfew. She stated that the father was very controlling to the point he would become upset if he believed the house was not cleaned to his required standards.

**{¶6}** She also contended that the father would not permit her to work once the children were born. She was a licensed cosmetologist and was a hair-stylist prior to having children. She has been taking courses to become a physical therapist. She attempted to work part-time at a doctor's office, but according to her, the father made her quit. She claimed the father was rarely home due to the fact he worked several jobs; therefore, he did not have much interaction with the children. The mother stated she was the one who provided for all the children's needs.

**{¶7}** The father testified that he works about 70 hours a week as a Cleveland police officer and at various side jobs. He admitted that the mother had been the primary caregiver of the children, but felt that the kids were now of an age where they would benefit from receiving attention from both parents. He stated that he is attentive to their needs and is good at guiding them and explaining things to them.

**{¶8}** The father contended he allowed the mother access to the marital funds until she began to overdraw on the accounts. He then restricted her use of the accounts. This was during a period that the father was laid off from his job as a police officer; therefore, it was a financially and emotionally stressful time.

**{¶9}** The father also denied setting a curfew for the mother. He explained that on the days he was not working, he requested that the mother not schedule anything for the children so that he could spend time with them. However, when she was angry with him, she would leave with the children, depriving him of time with them. He called her frequently in the evenings because he suspected she was having an affair due to activity he saw on her cellphone bill, and a friend of the father's had seen her with another man.

**{¶10}** The father testified that he did not forbid her from working and explained that if she worked part-time it would affect their medical insurance coverage. Therefore, if she was not willing to work full-time, it was not financially advantageous for the family for her to work.

**{¶11}** The father testified that until a GAL was appointed, the mother had limited his access to the children. He did not have his first overnight visit with the children until almost a year after they separated. The father testified that he wanted a shared parenting arrangement, but stated that if the court did not approve the plan, he wanted to be designated as the residential parent. He claimed he would be less manipulative than the wife and was more stable and impartial. He stated the mother is absent-minded and testified regarding an incident where she left candles burning in the home resulting in damage to the walls. He stated that she often leaves her curling iron on causing damage to the floor. He also stated that the mother's residence is cluttered while he keeps a neat and orderly house. According to the father, he took over laundry duties at the home when the mother started buying clothes because she could not keep up with the laundry.

{¶12} The parties separated in October 2010, after an incident that the mother described as domestic violence. The mother claims the father forced her to perform a sexual act and when she complained, he accused her of having an affair and grabbed her by her throat and pushed her against the wall. The father denied grabbing her by the throat but admitted that he pushed her into the bedroom to avoid fighting in front of the children. The mother admitted no marks were visible on her neck. The mother called the police, and the father was charged with domestic violence. He entered a plea to disorderly conduct, a first-degree misdemeanor and was suspended for ten days from the police force. He attended anger management counseling. According to the guardian ad litem ("GAL"), the anger management counselor did not believe that the father had anger issues but that his anger was "situation specific" with the mother.

{¶13} The mother also testified that several years earlier, when their son was three weeks old, the father had grabbed her by the neck and put her in an arm hold because she had left dishes in the sink. The father denied that he grabbed her. He admitted that she left him for several months after their son was born but it was because she was suffering from post-partum depression.

{¶14} The GAL recommended shared parenting. However, she testified that should the trial court not award shared parenting that the father be designated as the residential parent. The GAL believed the children would benefit from the father's example of self-discipline and that the father was more willing to facilitate visitation than the mother.

{¶15} After hearing the matter, the trial court divided the assets and debts of the parties. The trial court declined to order a shared parenting arrangement and designated the father as the residential parent.

## Father Residential Parent

{¶16} In her first assigned error, the mother argues the trial court erred by designating the father as the residential parent.

{¶17} R.C. 3109.04(F)(1) lists the relevant factors the court should consider in determining the best interest of the child. As pertinent to the instant case, they are as follows:

(a) **The wishes of the child's parents regarding the child's care;**

**\* \* \***

(c) **The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

(d) **The child's adjustment to the child's home, school, and community;**

(e) **The mental and physical health of all persons involved in the situation;**

(f) **The parent more likely to honor and facilitate court-approved parenting time or visitation and companionship rights;**

**\* \* \***

(h) **whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was**

**a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense. \* \* \*.**

{¶18} Although a trial court must follow the dictates of R.C. 3109.04 in deciding child-custody matters, it enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities. As the Ohio Supreme Court in *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988), held:

**The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.** (Citations omitted.)

{¶19} A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious. *Id.*

{¶20} The mother argues the trial court abused its discretion by awarding residential custody to the father because (1) he had committed domestic violence against her, (2) she testified regarding the father's controlling nature, (3) she had been the primary caregiver of the children, and (4) the father did not ask to be the residential parent, but wanted a shared parenting arrangement.

{¶21} A shared parenting agreement would have been the most desirous arrangement. The children are attached to both parents and both parents desire a relationship with the children. However, the mother ultimately decided that she did not want a shared parenting arrangement because she was afraid that the father would use the children to manipulate and control her. She wanted sole custody of the children.

{¶22} Unfortunately, where one parent does not want a shared parenting agreement, ordering such an arrangement is not desirable. Both parents have to agree to be cooperative under such an arrangement. *Strauss v. Strauss*, 8th Dist. No. 95377, 2011-Ohio-3831; *Sodowski v. Sodowski*, 8th Dist. No. 88929, 2007-Ohio-5061. The mother, along with stating she did not want a shared parenting plan, had also shown signs of not being cooperative when it came to the children. As the court found:

> **The parenting time experiences of the parents and children and prior to trial indicate that [the father] is more likely to honor and facilitate Court approved visitation and companionship rights than the [mother]. The [mother] avoided giving the [father] parenting time for a significant period of time at the beginning of this case and later unilaterally terminated overnight visitations during the school week. In addition, the [mother] refused to comply with this court's order that she sign a joint tax return which would have created marital funds needed herein. Thus, [the mother] has exhibited behaviors that indicate she would not be likely to comply with court orders including visitation orders.**
>
> **\* \* \***
>
> **The court is perplexed by the [mother's] consistent denial of shared parenting, even where shared parenting might give her control over the major decision-making in this matter. Her position is that to agree to shared parenting allows the [father] to manipulate and control her through the children. However, as the [father] readily noted during the course of trial, it was [the mother] who used the children and**

> **denied the [father] access through most of the time the case was pending.**

Aug. 24, 2012 Journal Entry, at 3, 6.

{¶23} Although the mother did present evidence of two physical altercations between her and the father, the altercations were several years apart and neither resulted in a domestic violence conviction or physical injury. The father's anger management counselor did not believe the father had anger issues, but that his anger was "situation specific with his wife." In fact, the mother testified that she was not afraid that the father would physically harm her or the children. The court also found that the children were not afraid of the father and "are happy to see their father and interested in being with him."

{¶24} Although the mother testified that the father was controlling and manipulative, the father also testified to the mother's manipulation as to the children. As the court concluded, the mother refused to allow the father to see the children for a significant amount of time during the proceedings and had denied father overnight visits with the children for almost a year. Even during the marriage, when the mother was angry, she would deprive the father of time with the children on his days off, by making sure the children had other plans. The evidence also indicated that the father did not control and manipulate her regarding the children. The mother made the decisions regarding their health care, school activities, clothing, and meals. Therefore, there is no evidence of him manipulating and controlling her regarding the children's care.

**{¶25}** It is true the mother has been the primary caregiver for the children, but the children are now of the age (nine and seven) where they can be more independent. The father also has more stable housing because he lives in the family home that he had purchased prior to the marriage and that the children have lived in their entire lives. The mother, at the time of trial, lived in a one bedroom basement apartment. As the GAL also testified, the children would benefit from the father's example of self-discipline, and, more importantly, he would be more willing to facilitate visitation with the mother.

**{¶26}** While the father's ability to supervise the children while working several jobs is a concern, he has a large, close-knit family that he stated could help him when needed. The terms of the visitation plan also indicate that during the school year, the children are to be with the mother for three days out of the week. The court also adopted the schedule set forth in the proposed shared parenting plan as to school breaks and holidays, which is liberal. Accordingly, the mother's first assigned error is overruled.

### Denial of Continuance

**{¶27}** In her second assigned error, the mother argues that the trial court erred by denying her request for a continuance.

**{¶28}** The decision to grant or deny a continuance lies within the sound discretion of the trial court. *State v. Lorraine*, 66 Ohio St.3d 414, 423, 613 N.E.2d 212 (1993); *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Thus, we will not reverse the trial court's decision absent an abuse of discretion.

{¶29} On March 4, 2012, attorneys Gregory Moore and Anne C. Fantelli filed a notice that attorney Joseph Stafford had been suspended by the Ohio Supreme Court. On April 9, 2012, the trial court noted that because of Stafford's suspension, Gregory Moore, from the law firm of Stafford & Stafford would represent the mother. However, on April 17, 2012, a notice of appearance was filed by both Gregory Moore and Anne C. Fantelli. Thus, attorney Fantelli, along with attorney Moore, were the attorneys of record.

{¶30} Moore and Fantelli both filed several continuances of the July trial date due to conflicts with other trials in which they were scheduled to appear. One of Fantelli's trials was for a trial set to begin the day after the Kinas case before the same judge hearing the Kinas case. The trial court denied the continuances.

{¶31} On the morning of trial, attorney Fantelli filed another motion for a continuance based on the fact that attorney Moore had been admitted to the hospital that morning. Prior to commencing the trial, the trial court conducted a hearing regarding the request for the continuance. Attorney Fantelli admitted to appearing at several pretrials and a settlement conference in the case, but claimed she was only familiar with the custody issues, not the financial matters.

{¶32} The court noted that Fantelli had attended all the pretrials prior to attorney Stafford's removal of the case, and also noted that the parties were very close to settlement. The court also stressed that this was a case with "very little property, debt, support, and that's it. This case shouldn't have taken two years. I just cannot let this go another day." Tr. Vol. I at 10. Opposing counsel also stated that attorney Fantelli had

been present at the pretrial the previous day where the financials were discussed. The court then gave counsel several hours to discuss and review the matter with her client.

**{¶33}** A review of the record indicates that attorney Fantelli was adequately prepared for the case. In fact, based on the questions she asked, she seemed familiar with the issues in the case. Also, as the court noted, this was not a case where there were complicated financial matters. The complication in the case was the custody issue, which Fantelli was admittedly familiar with. Therefore, under these circumstances, where the matter has been pending for two years, the case was not financially complicated, and the attorney was familiar with the case and given several hours to discuss matters with her client, the trial court did not abuse its discretion by refusing to continue the matter. Accordingly, the mother's second assigned error is overruled.

## Denying Admission of the Evidence

**{¶34}** In her third assigned error, the mother argues that the trial court abused its discretion by refusing to allow her to admit evidence she obtained from a public records request regarding the October 2011 altercation between the mother and father.

**{¶35}** A trial court is vested with broad discretion in the admission and exclusion of evidence and a reviewing court will not reverse a trial court's judgment for failure to admit or exclude evidence unless the trial court has clearly abused its discretion and the complaining party has suffered material prejudice. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary,

or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶36}** Here, the parties were both extensively cross-examined about the incident. This was not a criminal trial in which the father's guilt was being established; therefore, the investigative reports of the police, which is what the bulk of the public records request contained, were not pertinent to the proceedings. The mother testified to her version of what occurred, as did the father. The investigative reports merely recite what the mother had informed the officers. The officers did not witness the event. Therefore, the reports were cumulative evidence.

**{¶37}** Admittedly, the investigative reports also show that the children told the officers that the parents were arguing and some physical contact occurred between the two. However, both parties admitted to arguing and that a physical altercation occurred. Thus, the court's failure to admit such cumulative evidence is harmless. Accordingly, the mother's third assigned error is overruled.

**{¶38}** Judgment affirmed.

It is ordered that appellee recover from appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the domestic relations court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

 

_____
PATRICIA ANN BLACKMON, JUDGE

TIM McCORMACK, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS
WITH SEPARATE OPINION ATTACHED


SEAN C. GALLAGHER, P.J., CONCURRING:

**{¶39}** I concur fully with the judgment and analysis of the majority, but write separately because, while the majority addresses the issue, I wish to emphasize that the appellant's "me or him" strategy was the product of her view that she was a victim and would never be on equal footing with the appellee. Whether this was justified or not, we must recognize and respect her view and hope that moving forward the parties can find some common ground for the sake of their children.