JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Anthony A. O'Brien ("husband"), appeals from various aspects of the judgment entry and decree of divorce entered by the Court of Common Pleas, Division of Domestic Relations. For the reasons set forth below, we affirm in part, reverse in part and remand.
 {¶ 2} Husband and plaintiff-appellee, Darby O'Brien ("wife"), were married on July 27, 1995. Three children were born as issue of the marriage, all of whom were still minors at the time of hearing. Throughout the course of the marriage, the parties accumulated a marital home in Shaker Heights, Ohio valued at one million dollars, several valuable luxury vehicles, the children attended exclusive private schools and enjoyed a luxurious lifestyle. The wife did not work outside the home.
 {¶ 3} On March 10, 2003, the wife filed for divorce. The court issued a temporary support order obligating the husband to pay child support of $2,135.70 per month and temporary spousal support of $3,000 per month, effective April 30, 2003.
 {¶ 4} On or about April 2, 2003, the parties obtained a first mortgage on the marital residence in the amount of $360,000 and entered into an agreement, which provided in pertinent part, that the husband would execute a second mortgage in favor of the wife on the marital residence in the amount of $250,000 as security for her interest in the property pending the divorce proceedings. The balance of the net proceeds of the mortgage loan would be disbursed equally between the parties, with both parties agreeing to pay equal shares of the household bills, health insurance, *Page 4 
and tuition for the minor children. The husband did not pay the wife any portion of these funds.
 {¶ 5} On October 25, 2003, the wife left the marital residence and moved with the children into a rental property in Chagrin Falls, Ohio. The husband remained in the marital residence, but did not pay the residential mortgage. During the pendency of this divorce, there were two offers to purchase the house; however, both offers were withdrawn based on the outstanding liens and mortgages on the house. Currently, the house is in foreclosure proceedings.
 {¶ 6} Sometime in 2003, after the divorce was filed, the husband was found delinquent in support obligations to one of his former wives in Michigan. The arrears owing her totaled $260,000. The husband was jailed in Michigan for six weeks and was released upon payment of $150,000.
 {¶ 7} On May 5, 2004, a civil suit was filed against the husband and several other defendants. Pursuant to a federal order, the husband was restrained from transferring any funds including the marital residence.
 {¶ 8} On August 31, 2005, the husband was indicted for conspiracy to sell unregistered securities, the sale of unregistered securities, securities fraud, and wire fraud in United States of America v. AnthonyO'Brien, Case No. 1:05-CR-00417. The husband paid his attorneys $300,000 to defend him and he was eventually acquitted of the charges. *Page 5 
 {¶ 9} On November 1, 2004, the trial court reduced the husband's support obligations based on decreased earnings and ordered him to pay $500 per month in spousal support and $1,596 per month in child support, effective November 1, 2004.
 {¶ 10} On January 19, 2006, the parties entered into an agreement with regard to the allocation of parental rights and responsibilities concerning the three minor children.
 {¶ 11} A contested divorce trial was held on April 24, 25, 27 and June 9, 2006. On February 23, 2007, the trial court issued a judgment entry of divorce with findings of fact.
 {¶ 12} It is from this order that the husband now appeals and raises nine assignments of error for our review.
 {¶ 13} "I. The trial court erred and abused its discretion by denying the appellant's motion for stay proceedings [sic] and continued request for a continuance of the trial."
 {¶ 14} In his first assignment of error, the husband argues that the trial court erred in denying his motion to stay the divorce proceedings.
 {¶ 15} This Court reviews the trial court's denial of a motion for a continuance under an abuse of discretion standard. Factors relevant to ruling on a motion for a continuance are "the length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate *Page 6 
reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors." State v.Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 16} Here, the husband desired a continuance or stay of proceedings pending the outcome of criminal charges filed against him in federal court. He claimed that he could not testify at the divorce proceeding for fear of possibly incriminating himself in violation of his Fifth Amendment rights.
 {¶ 17} We find that the trial court did not abuse its discretion in denying the husband's request for a stay/continuance. The complaint for divorce was filed on March 10, 2003. Thus, the divorce case had been pending for more than three years on the date first scheduled for trial. The continuance or stay would have resulted in a lengthy delay, since the criminal trial had been pending since August 2005, and was not scheduled until July 2006, and could have been even longer. Moreover, we do not find that the requested continuance was based on a legitimate reason. First, the federal case was completely unrelated to the divorce proceeding and second, the husband was represented by competent counsel who could have appropriately advised him concerning his Fifth Amendment rights with respect to facts relating to the federal criminal proceeding.
 {¶ 18} Assignment of Error I is overruled.
 {¶ 19} "II. The trial court erred and abused its discretion by ordering the appellant to produce and attach personal and business tax returns and personal *Page 7 
income documents to any prospective motion to modify support filed by the appellant; and its decision is unreasonable, unconscionable, arbitrary, and contrary to Ohio law."
 {¶ 20} In the divorce decree, the trial court made the following order, in pertinent part, with regard to spousal support:
 {¶ 21} "* * * Any request to modify the amount of spousal support shall include attached to the motion signed copies of the [Husband's] United States Federal Income Tax returns, personal and business, for two years prior to filing the motion to modify, and proof of income for the six months immediately preceding the filing of the motion to modify.FAILURE TO INCLUDE ALL OF THE REQUIRED INFORMATION SHALL ENTITLE THEOTHER PARTY TO FILE A MOTION FOR EX PARTE RELIEF TO DISMISS THE MOTIONTO MODIFY SUA SPONTE * * *."
 {¶ 22} The husband argues that this provision "essentially prevents him from filing a motion to modify support, based upon a change in circumstances." He also argues that the "ex parte" provision violates his rights to due process and the opportunity to be heard.
 {¶ 23} "R.C. 3105.18(E) provides that a trial court may modify the terms of spousal support if the court determines that circumstances by the parties have changed. A change in circumstances includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." The burden of showing that a reduction of spousal support is *Page 8 
warranted is on the party who seeks the reduction. Haninger v.Haninger (1982), 8 Ohio App.3d 286.
 {¶ 24} Since the burden would be on the husband to show a change in circumstances, we find no error in the court's requiring him to attach the necessary documents to any motion he might file to support his request. Based upon the history of this case, i.e., the husband's failure to comply with discovery requests and failure to disclose tax returns, it was reasonable for the trial court to order that any documentation relating to a change in circumstances be provided at the time of the filing of the motion.[1] The husband's right to file a motion to modify support based upon a change in circumstances and his right to be heard is not affected by the trial court's order at all.
 {¶ 25} Assignment of Error II is overruled.
 {¶ 26} "III. The trial court erred and abused its discretion in its determination of arrearage and by ordering the appellant to pay monthly arrearage amount; and its decision with regard to temporary arrearage is against the manifest weight of the evidence."
 {¶ 27} In this assignment of error, the husband argues that the trial court erred in its determination of temporary support arrears. *Page 9 
 {¶ 28} The husband first argues that the trial court erroneously selected March 10, 2003, the date of filing, as being the effective date of temporary support orders, because the wife resided in the marital home until October 25, 2003.
 {¶ 29} It is within the discretion of the trial court as to whether to make a temporary support order effective as to the date the motion was filed. Miller v. Miller (Jan. 16, 1987), 6th Dist. No.L-86-011.
 {¶ 30} Here, we do not find that the trial court abused its discretion in ordering temporary support retroactive to March 10, 2003 rather than October 25, 2003, the date the wife actually moved out of the home. The evidence at trial shows that the wife paid most of the household bills during this time period because the husband refused to do so and/or because the husband was in jail in Michigan for six weeks. Moreover, the husband agreed to pay the mortgage and real estate taxes and was ordered to pay these bills, but failed to do so. See Web v. Web, Marion App. Nos. 9-06-70 and 9-07-04, 2007-Ohio-5625 (the calculation of support begins when the party requests the temporary support).
 {¶ 31} Next, the husband argues that his income for support purposes should have been $60,000. We disagree for the following reasons: first, the wife's motion for support pendente lite was filed on April 30, 2003 and supported by documentation filed by the husband several weeks earlier that his annual income was $216,000. Thus, the trial court did not err in using this figure when it issued its *Page 10 
original temporary support order for $2,135.70 per month in child support and $3,000 per month in spousal support.
 {¶ 32} Next, at a hearing held on October 12 and 13, 2004, the husband testified that he earned $60,000 per year. However, the evidence demonstrated that he deposited funds into his accounts well in excess of $100,000 annually. Thus, we do not find that the trial court abused its discretion in determining that the husband's income was $100,000 for purposes of determining his support obligation.
 {¶ 33} Next, the husband argues that the money from proceeds of the first mortgage ($129.859.02) was intended to be a credit for the support of the wife and minor children. The terms of the agreement entered into by the parties on April 2, 2003, do not state that the payment was in lieu of child and spousal support. Rather, the agreement clearly states that these funds were "as security for [wife's] undetermined interest in said property in the pending divorce proceedings." Moreover, the husband never paid the wife her portion of these funds.
 {¶ 34} Finally, the husband argues that he should have received a support credit in the amount of $38,000. Since the wife concedes that the husband is entitled to this credit, we sustain this portion of the husband's assignment of error and remand this case for correction of the court's entry to grant husband credit for $38,000 paid in child support.
 {¶ 35} Assignment of Error III is sustained in part. *Page 11 
 {¶ 36} "IV. The trial court erred and abused its discretion in determining that the duration of the parties' marriage as eleven years; and its decision is against the manifest weight of the evidence."
 {¶ 37} In the divorce decree, the trial court made the following finding of fact with regard to the duration of the marriage:
 {¶ 38} "* * * the marital property acquired during the marriage, which period is from the date of the marriage, July 27, 1995, until the conclusion of the trial in June 2006, approximately eleven (11) years * * *."
 {¶ 39} The husband argues that the trial court erroneously selected the date of trial as being the date of the termination of marriage because the parties have been living apart since October 25, 2003.
 {¶ 40} Pursuant to R.C. 3105.171(A)(2)(a), the date of the final hearing is presumed to be the appropriate termination date of the marriage unless the court, in its discretion, uses a de facto termination. See Badovick v. Badovick (1998), 128 Ohio App.3d 18;Berish v. Berish (1982), 69 Ohio St.2d 318, 321.
 {¶ 41} In general, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities, and separate bank accounts. Gullia v. Gullia (1994), 93 Ohio App.3d 653,666. However, courts should be reluctant to use a de facto termination of marriage date solely because one spouse vacates the marital home.Day v. Day (1988), 40 Ohio App.3d 155, 158. Rather, a *Page 12 
trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances. Id. A court's decision to use the date of the final hearing or a de facto date is discretionary and will not be reversed on appeal absent an abuse of discretion. Schneider v.Schneider (1996), 110 Ohio App.3d 487, 493.
 {¶ 42} Here, we do not find that the trial court abused its discretion in failing to find a de facto date of termination of the marriage that was earlier than the final hearing date. The wife testified that she moved from the marital residence with the parties' minor children due to the husband's abusive and violent behavior at the home. She testified that the husband threatened to kill her and that she believed it was in her and her children's best interest to leave the marital home.[2] SeeReese v. Reese (May 22, 1997), Cuyahoga App. No. 71336 (public policy supports refusing to use a de facto termination date for the marriage when the wife and children are forced to leave the marital residence because of a hostile environment, as doing so would reward the husband for his abusive behavior toward his wife and children).
 {¶ 43} Moreover, significant portions of the parties' finances remained entangled until trial. The parties did not divide all their assets when they separated, the wife was still dependent on the husband for support, and the husband failed to comply with the written agreement for payment of debts. See Gullia, supra at 666 (whether the parties have separated their business activities and other financial *Page 13 
associations are appropriate factors for the trial court to consider when determining whether a de facto termination date should be found).
 {¶ 44} For these reasons, we find the trial court did not err in refusing to find a de facto termination date of the marriage.
 {¶ 45} Assignment of Error IV is overruled.
 {¶ 46} "V. The trial court erred and abused its discretion by entering provisions which effectively limit and/or prevent the appellant's right to an appeal; and its decision is unreasonable, unconscionable, arbitrary, and contrary to Ohio law."
 {¶ 47} In the divorce decree, the trial court made the following order, in pertinent part, with regard to the husband's right to claim the income tax dependency exemption during the odd years:
 {¶ 48} "* * * Should defendant exercise his right of appeal of thisorder, no stay shall be granted by this court concerning this orderawarding federal and/or state income tax dependency exemptions." (Emphasis in original.)
 {¶ 49} The husband argues that this provision infringes upon his right to file an appeal.
 {¶ 50} The denial of a stay by the trial court has no impact on the husband's right or ability to appeal the decision. Moreover, the husband may request a stay from this Court if the trial court denies his request. See App.R. 7. Husband's right to file an appeal has not been impacted by this provision. *Page 14 
 {¶ 51} Assignment of Error V is overruled.
 {¶ 52} "VI. The trial court erred and abused its discretion in the overall division of property."
 {¶ 53} In this assignment of error, the husband argues that the trial court abused its discretion in its division of marital property and did not divide the property equitably between the parties.
 {¶ 54} R.C. 3105.171(B) mandates the equitable distribution of marital and separate property. Marital property includes all real and personal property and interest in real and personal property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. Separate property includes property acquired prior to the date of marriage, or through inheritance or gift, or acquired with non-marital funds after separation. The party seeking to establish that an asset is separate property by gifting has the burden to prove the separate property claim by clear and convincing evidence. See R.C. 3105.171(A)(6)(a)(vii).
 {¶ 55} We review a trial court's division of property under an abuse of discretion standard. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131. In doing so, we consider whether the property division, as a whole, was an abuse of discretion. See Briganti v. Briganti (1984),9 Ohio St.3d 220, 222. An abuse of discretion connotes more than an error in judgment; it implies the court's attitude is *Page 15 
unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 56} With this principal in mind, we address husband's various assignments of error.
25, 000 Shares of Stock
 {¶ 57} In the divorce decree, the trial court awarded the wife 25, 000 shares of stock in Beere Financial Equity Corp. ("Beere stock"). The husband contends that the trial court erred in doing so because the Beere stock was acquired after the parties had separated.
 {¶ 58} Our review of the record leads to the conclusion that the husband failed to prove by clear and convincing evidence that the 50, 000 shares of Beere stock was acquired after the parties had separated. The husband failed to submit any credible evidence to support a separate property interest in the shares of Beere stock. Thus, the 50, 000 shares of Beere stock constituted marital property and, accordingly, the trial court did not abuse its discretion when it determined that the husband was not entitled to a separate interest in the stock and that the wife was entitled to a one-half (25, 000 shares) interest in the stock.
The $25,000 Distributive Award
 {¶ 59} In the divorce decree, the trial court awarded the wife $25,000 as a distributive award based on the husband's financial misconduct. *Page 16 
 {¶ 60} R.C. 3105.171(E)(3) provides, in pertinent part: "if a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award * * *." A determination on financial misconduct lies in the trial court's sound discretion. Huener v. Huener (1996), 110 Ohio App.3d 322.
 {¶ 61} In its judgment entry of divorce, the trial court determined that the husband engaged in "significant financial misconduct" and dissipation of the marital assets.[3] Our review of the record affirms this finding by the trial court. The husband's actions of failing to pay mortgages and federal taxes, allowing liens to accumulate against real estate, in addition to being indicted on federal criminal charges, resulted in a substantial, if not entire, dissipation of the marital assets. Accordingly, we find that the trial court's decision to award the wife a distributive award in the amount of $25,000 was not arbitrary, unconscionable, or unreasonable.
The Shaker Heights Residence
 {¶ 62} In the divorce decree, the trial court awarded the wife payment in full of the note and/or mortgage for $250,000 and a one-half interest of the net proceeds on the marital residence. In general, the husband claims this is an inequitable distribution of the marital property. *Page 17 
 {¶ 63} A review of the record demonstrates that the parties entered into an agreement on April 2, 2003, whereby the husband agreed to execute a second mortgage in favor of the wife on the residence in the amount of $250,000. The husband failed to do so. Accordingly, we find no error in the trial court's enforcing this agreement and awarding the wife the full amount of the second mortgage.
 {¶ 64} Furthermore, the record reflects that the husband has lived in the marital home since the parties separated and has not paid the mortgage or real estate taxes for a significant period of time. The residential mortgage is now in foreclosure. Two offers to purchase the residence were withdrawn due to the outstanding liens and mortgages against the property. The husband's misconduct has resulted in a substantial, if not entire, dissipation of the value of the marital residence. Given the pending foreclosure proceedings, it is unlikely that the wife will receive any proceeds from the marital residence or from her second mortgage.
 {¶ 65} Assignment of Error VI is overruled.
 {¶ 66} "VII. The trial court erred and abused its discretion by awarding spousal support to the appellee."
 {¶ 67} In his seventh assignment of error, the husband challenges the award of spousal support to the wife in the amount of $500 per month for two years.
 {¶ 68} R.C. 3105.18(C)(1) provides as follows:
 {¶ 69} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of *Page 18 
spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 70} "(a) the income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) the standard of living of the parties established during the marriage; (h) the relative extent of education of the parties; (i) the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) the contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) the tax consequences, for each party, of an award of spousal support; (m) the lost income production capacity of either party that resulted from that party's marital responsibilities; and (n) any other factor that the court expressly finds to be relevant and equitable." *Page 19 
 {¶ 71} A trial court's decision not to acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C)(1) does not necessarily mean the evidence was not considered. Barron v. Barron, Stark App. No. 2002CA00239, 2003-Ohio-649.
 {¶ 72} Here, the trial court noted the following in its decision to award the wife $500 per month for two years as spousal support: the parties were married for 11 years and have three children together; the wife, age 37, has had limited employment since she is the primary caretaker of the parties' three minor children; she has a college degree and earned $16,900 working part time in 2005; her basic living expenses are approximately $5,000 per month; and she has had to borrow money from her parents to pay bills when the husband failed to pay the temporary support orders. The parties enjoyed a "luxurious" lifestyle. The marital home was valued at one million dollars; the husband owned several luxury vehicles, including a Range Rover, Ferrari, Mercedes convertible, and Porsche; they enjoyed lavish vacations, including rentals of private planes. The children attended expensive private schools. The husband, age 54, owned several businesses, but states that his annual income is $60,000 per year. However, the husband's earnings were in excess of his reported earnings for calender years 2000 and 2001 based on a review of his federal income tax filings. The husband provided no evidence of expenses. On August 31, 2005, the husband was indicted on several federal RICO charges and paid his attorneys $300,000. *Page 20 
 {¶ 73} Having reviewed the above facts and the pertinent portions of the record, we are not inclined to substitute our judgment for that of the trial judge, who concluded that $500 per month for two years would be appropriate, necessary, and reasonable under R.C. 3105.18(C). We further note the court maintained continuing jurisdiction over spousal support in this case, should circumstances change.
 {¶ 74} Assignment of Error VII is overruled.
 {¶ 75} "VIII. The trial court erred and abused its discretion by awarding attorney fees, including future attorney fees, costs of litigation, court costs, and out-of-pocket expenses to the appellee."
 {¶ 76} In his eighth assignment of error, the husband challenges an award of attorney fees in the sum of $50,000 to the wife. The wife had requested approximately $98,000 in fees.[4]
 {¶ 77} The decision of whether to award attorney fees rests in the sound discretion of the court and will not be overturned on appeal absent an abuse of that discretion. Layne v. Layne (1992),83 Ohio App.3d 559, 568. Pursuant to R.C. 3105.73,[5] a trial court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In *Page 21 
determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate. * * *"[6]
 {¶ 78} Here, the trial court made the following findings with regard to the award of attorney fees:
 {¶ 79} "The Court further reiterates how complex this case was, that the [husband] failed, refused and/or neglected to comply with reasonable and necessary court orders, discovery requests, created factual and legal issues for his spouse requiring considerable legal effort to protect her client's interests, and prevent marital property from disappearing. It was essential that counsel for [wife] protect her interests at every intervention posed by the [husband]. There were numerous hearings, and only one matter, allocation of parental rights, that was resolved by agreement prior to trial. The case is on-going in Federal Court and Common Pleas court on the foreclosure case with no end in sight. There were many motions to show cause sustained by the court against the [husband]. The [husband] did not voluntarily reveal his income or file federal tax returns required by law. Sadly, the marital residence early on could have been sold, but for the [husband's] conduct, which may have disposed of many legal issues. The evidence showed that [wife's] *Page 22 
counsel was required to spend considerable time and labor to represent the [wife] in this legally and factually complex case, that the case involved considerable novelty and legal skill to perform the services necessary to protect her client's interest, that the number of hours spent was consistent with the tasks of this representation, that the fee charged was reasonable for the locality for similar services, that the fee was reasonable given the results obtained, that there were some unique issues of law, that the [husband] failed to cooperate with valuing assets and failed to assist in completing discovery * * *. Primarily, however, this trial became delayed and expenses were incurred because the [husband] refused to reasonably comply with court orders necessary to sustain his family as ordered by the court, had a history of non-compliance with other court orders to another family and did not complete discovery. [Wife] could not adequately pursue her interests in this and Federal Court given the complexity of this case factually and legally, and due to the extraordinary dissipation of marital assets during the course of this case * * *. Given all the factors taken into consideration, the court finds that a reasonable and fair sum due from the [husband] to the [wife] as additional spousal support (he had the ability to pay $300,000 when he was facing jail), is $50,000 in addition to the sums already paid by the [wife]."
 {¶ 80} Based on the foregoing evidence supported by the record, we find that the trial court did not abuse its discretion in awarding the wife $50,000 in attorney fees and litigation expenses. *Page 23 
 {¶ 81} The husband also claims that the trial court erroneously awarded the wife future attorney fees and expenses. In the judgment entry of divorce, the trial court ordered that the husband would be responsible for the wife's future attorney fees and expenses if he is found in contempt of the court's orders. The wife's attorney would still need to present evidence of the reasonableness of such fees. The future award of damages may be part of a contempt sanction, which may be imposed "to compensate for losses or damages sustained by reason of noncompliance." See EMC Mortgage Corp. v. Pratt, Franklin App. No. 07AP-214, 2007-Ohio-4669.
 {¶ 82} Assignment of Error VIII is overruled.
 {¶ 83} "IX. The trial court erred and abused its discretion by granting prospective injunctive relief."
 {¶ 84} In the divorce decree, the trial court made the following order, with regard to the temporary restraining orders issued during the divorce proceedings:
 {¶ 85} "IT IS ORDERED, ADJUDGED AND DECREED that every injunction shall remain in full force and effect and that the court may modify, vacate or terminate an injunction that was previously issued upon the filing of a motion served upon the opposing parties pursuant to Civ.R. 75. This order shall not affect the finality of this judgment." *Page 24 
 {¶ 86} The husband argues that this provision violates Civ.R. 75 because the trial court does not have the authority to make temporary restraining orders permanent.
 {¶ 87} In Colom v. Colom (1979), 58 Ohio St.2d 245, the Ohio Supreme Court held that: "In a domestic relations action, interlocutory orders[7] are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree."
 {¶ 88} Here, the trial court specifically explained the necessity for retaining all injunctions until the issues in federal court and the foreclosure issues in common pleas court are completed.[8] Contrary to the husband's assertions, the injunctions are not permanent and may be modified, vacated, or terminated upon motion by a party.
 {¶ 89} Assignment of Error IX is overruled.
Judgment affirmed in part, reversed in part and remanded for correction of the court's entry to grant husband credit for $38,000 paid in support.
It is ordered that appellee recover from appellant her costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 25 
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas, Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] Indeed, pursuant to Loc.R. 19(B), the movant would be required to present documentation at the time of hearing.
[2] Transcript of hearing on April 24, 2006, at pg. 73.
[3] Journal Entry at Vol. 4822, Pg. 634.
[4] Hearing on April 24, 2006, Tr. 186.
[5] Effective April 27, 2005, R.C. 3105.18(H) was repealed. Under former R.C. 3105.18(H), a court could award reasonable fees to any party at any stage of the proceedings if it determined the other party had the ability to pay and either party would be prevented from fully litigating their rights and adequately protecting their interests if reasonable attorney fees were not awarded.
[6] Under the current statute, a court may, but is not required, to consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors in its analysis of whether an award is equitable. SeeHumphrey v. Humphrey, Ashtabula App. No. 2006-A-0083, 2007-Ohio-6738.
[7] A temporary restraining order is an interlocutory order. SeeKroger v. Cleve/Lorain, Inc. (Aug. 29, 1985), Cuyahoga App. No. 49319.
[8] Journal Entry at Vol. 4822, P.651. *Page 1