JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Lowell T. Graham, appeals from various aspects of the Judgment Entry-Decree of Divorce entered by the Cuyahoga County Court of Common Pleas, Domestic Relations Division, granting a divorce, dividing the property, and awarding spousal support to defendant-appellee, Trudy J. Graham. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Lowell and Trudy Graham were married on March 3, 1988. There were no children from the marriage. On July 5, 2006, Mr. Graham filed an action for divorce alleging gross neglect of duty, extreme cruelty, adultery, and incompatibility. He also alleged that Mrs. Graham took a $15,000 cash advance from a joint credit card approximately two months before the divorce action was filed. Mr. Graham sought and was granted a temporary restraining order to prevent his wife from disposing of marital assets.
 {¶ 3} On August 4, 2006, Mrs. Graham filed her answer and counterclaim, admitting that she took the $15,000 cash advance on the credit card but denying all other allegations against her. She also alleged that her husband was guilty of gross neglect of duty, extreme cruelty, and incompatibility. She further alleged that Mr. Graham removed more than $75,000 in cash from a joint safe deposit box. Mrs. Graham also sought and was granted a temporary restraining order to prevent her husband from disposing of marital assets. *Page 2 
 {¶ 4} A contested divorce trial was held on multiple days from May through July of 2007. The trial court issued a decision on September 12, 2007, granting a divorce on the grounds of incompatibility and resolving the distribution of the parties' assets and debts.
 {¶ 5} It is from that decision that Mr. Graham now appeals and raises two assignments of error for our review.
 {¶ 6} "I. The trial court erred as a matter of law and abused its discretion when wrongfully taking into consideration non-marital, i.e., separate property in arriving at the division of property."
 {¶ 7} Mr. Graham asserts that the trial court erred in dividing the cash in a jointly owned National City Bank safe deposit box equally between the parties. He argues that the money came from his social security benefits earned prior to the marriage and therefore was his separate property not subject to division in the divorce.
 {¶ 8} Generally, this court reviews the overall appropriateness of a trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348. However, the initial determination by a trial court that an asset is separate or marital property is a factual finding that will not be reversed unless it is against the manifest weight of the evidence.Caraballo v. Caraballo, Cuyahoga App. No. 84039, 2004-Ohio-5387, *Page 3 
citing Okos v. Okos (2000), 137 Ohio App.3d 563. This standard of review is highly deferential and only some evidence is sufficient to sustain the judgment and prevent a reversal. Pruitt v. Pruitt, Cuyahoga App. No. 84335, 2005-Ohio-4424.
 {¶ 9} The uncontested facts show Mr. Graham was eligible for social security benefits at age 62, but delayed receiving those benefits for several years, so as to maximize the amount of benefits. Mr. Graham began receiving social security benefit checks in December 1999. From 1999 through 2006, Mr. Graham was paid the sum of $95,700 in social security benefits. The monthly checks were received by mail and either Mr. Graham or Mrs. Graham would take the check to the bank and cash it. The disposition of this cash was one of the contested facts left to the trial court's determination.
 {¶ 10} Throughout the 19 years of marriage, Mr. Graham was employed by the Department of Veterans Affairs ("VA") and worked at a VA hospital. From 1999 through 2006, Mr. Graham received both social security benefits and a VA salary. Mr. Graham's VA salary in 2006 was in excess of $60,000. Every two weeks, either Mr. Graham or Mrs. Graham would deposit Mr. Graham's paycheck into the couple's joint savings account. Then, whoever deposited the check would immediately withdraw most of that money back out of the account in cash. *Page 4 
 {¶ 11} It was uncontested that during the marriage the couple never had a checking account and paid all of the household bills, including the house mortgage and utilities in cash. They managed all of their financial affairs through a single joint savings account, a few credit cards, and a joint safe deposit box. Occasionally, they would use a credit card for purchases, but then would pay the balance off each month in cash.
 {¶ 12} Mrs. Graham testified that from 2000 to 2006, either she or Mr. Graham would cash Mr. Graham's social security benefit checks and place some or all of the cash in the safe deposit box. She said they also cashed their income tax refund checks from that period and placed that cash in the box as well. Mrs. Graham testified that they kept a running tally of the amount in the box on a post-it note on the refrigerator. She produced such a note showing a balance of $76,141. She testified that on May 6, 2006, Mr. Graham came home, went through her purse and took her credit cards, cell phone, and cash. He then left the house. When she went to the bank that evening, she found the safe deposit box empty.
 {¶ 13} Mr. Graham testified at several hearings over the course of three months. He testified that Mrs. Graham almost always cashed his paycheck and social security checks, but that sometimes he would do it. He said Mrs. Graham was responsible for paying the bills. He could not remember where they kept the *Page 5 
money from the social security checks or from the income tax refunds but he remembered they used those funds to buy cars and go on vacations. He remembered they sometimes put cash from the social security checks in the safe deposit box but maintained that the box never contained more than $10,000 over the years. He stated he was certain there was only $3,000 or $4,000 cash in the safe deposit box when he opened it on May 6, 2006. He stated that he went to the bank that afternoon because he was afraid Mrs. Graham had taken the money out of the box. He said once he determined that the money was still there, he left without removing any of the cash.
 {¶ 14} Bank records indicate that the box was opened jointly by the parties in 2002, and that, through 2004, both parties had entered the box on different occasions. Those records also show that from January 2005 through May 5, 2006, Mr. Graham was the only one to access the box. The sign-in card for May 6, 2006 shows both parties accessed the box, Mr. Graham at 4:05 p.m. and Mrs. Graham at 6:00 p.m.
 {¶ 15} The evidence before the court consisted of bank statements, safe deposit entrance records, credit card bills, employment stubs, and income tax records. The trial court considered all of the evidence, resolved the conflicts in the testimony, and found that the parties maintained a joint safe deposit box into which they placed cash from the social security checks and the couple's joint *Page 6 
income tax refund checks. The court further found that as of May 5, 2006, there was $76,141 in cash in the box which was removed by Mr. Graham on May 6, 2006.
 {¶ 16} Based upon these findings, the court determined that Mrs. Graham was entitled to one-half of the contents of the box, and ordered Mr. Graham to pay Mrs. Graham the sum of $38,070. The court offset this amount against Mr. Graham's $27,250 equity in the marital home, leaving a balance due Mrs. Graham of $10,820.
 {¶ 17} Mr. Graham argues that if there was any money in the safe deposit bank, it belonged exclusively to him as his separate property. He argues that the trial court abused its discretion in awarding half of the contents to Mrs. Graham. We disagree.
 {¶ 18} "Marital property" is generally defined in R.C. 3105.171(A)(3)(a) as property acquired by either or both spouses during the marriage. "Separate property," as relevant to this appeal, is defined in R.C. 3105.171(A)(6)(a) "as any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." Marital property does not include separate property, R.C. 3105.171(A)(3)(b), and "the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is *Page 7 
not traceable." R.C. 3105.171(A)(6)(b). The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace an asset to separate property. Peck v. Peck (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.
 {¶ 19} Because the couple relied exclusively on cash to conduct their financial affairs, the court had little evidence other than the testimony of the parties upon which to rely in making its determination of marital assets.
 {¶ 20} Mr. Graham's social security benefits would not generally be considered marital assets subject to division in divorce. See Hoyt v.Hoyt (1990), 53 Ohio St.3d 177, 178, fn. 3. However, because the party seeking to have a particular asset classified as separate property has the burden of proof to trace the asset to separate property, the burden was on Mr. Graham to trace the cash in the safe deposit box to his social security benefits. Mr. Graham testified that the cash in the box came from his VA salary, his social security checks, and the couple's income tax refunds. In response to the question by the court, "Where would this money that she [Mrs. Graham] would put in the safe deposit box come from?" Mr. Graham responded, "Mostly my salary." Therefore, according to his own testimony, the cash from social security benefits was commingled with marital assets. *Page 8 
{¶ 21} Mr. Graham offered no evidence as to how much of the cash came from each source. In fact, he maintained throughout the trial that there was only $3,000 or $4,000 in the box on May 6, 2006, and that most of the money received over the years from his social security benefits was spent on cars for both parties, joint vacations, improvements to the marital home, and the couple's living expenses. Therefore, Mr. Graham failed to provide evidence tracing the funds as his separate property.
 {¶ 22} The trial court found that over the years the parties deposited cash from both the social security checks and their joint federal, state, and local income tax refunds into the safe deposit box. Absent proof from Mr. Graham that a specific dollar amount of that cash came from his social security checks, the trial court's treatment of the cash in the joint safe deposit box as a marital asset, subject to being divided between the parties, was not against the manifest weight of the evidence. Mr. Graham's first assignment of error is overruled.
 {¶ 23} "II. The trial court abused its discretion when awarding attorney fees absent a finding of the necessity of additional spousal support or that the obligor had the means to pay such additional spousal support."
 {¶ 24} In its judgment entry, the trial court found that Mrs. Graham had incurred reasonable and necessary attorney fees in the amount of $10,727.45. *Page 9 
The court then ordered Mr. Graham to pay those fees to Mrs. Graham within 30 days.
 {¶ 25} The decision whether to award attorney fees rests in the sound discretion of the court and will not be overturned on appeal absent an abuse of that discretion. OBrien v. OBrien, Cuyahoga App. No. 89615,2008-Ohio-1098, citing Layne v. Layne (1992), 83 Ohio App.3d 559. An abuse of discretion is more than an error of law; it implies an attitude by the trial court that is arbitrary, capricious, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} Mr. Graham relies on R.C. 3105.18(H) and argues that the trial court failed to make a finding that he was more capable to pay Mrs. Graham's fees as well as his own and therefore the court abused its discretion by ordering him to pay her attorney fees.
 {¶ 27} Mr. Graham relies on the wrong statute. R.C. 3105.18(H) was repealed effective April 27, 2005.[1] It was replaced with R.C. 3105.73 which applies in this case and provides: *Page 10 
 {¶ 28} "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 29} While the court's entry does not specifically state its finding that the award of fees to Mrs. Graham was equitable, a review of the judgment entry finds that before awarding attorney fees the court considered and made findings relative to the factors listed in the statute including the division of the parties' marital assets, the relative income of the parties, and the award of spousal support.
 {¶ 30} Additionally, the court's entry shows that it also considered the conduct of the parties. The court noted that Mr. Graham had closed and kept the balance from the joint savings account, removed $76,141 cash from the joint safe deposit box, was in arrears on the court's temporary support order, and filed the couple's 2006 joint tax returns without Mrs. Graham's authorization and *Page 11 
then kept the entire tax refund for himself. The court found that Mrs. Graham had taken a $15,000 cash advance on the couple's credit card.[2]
 {¶ 31} Therefore, although the court's entry does not state that it found the award of attorney fees to be equitable, the record reflects that the court considered the statutory factors prior to awarding fees to Mrs. Graham. Based upon the record, we cannot find that the court's action was arbitrary, capricious, or unconscionable. Accordingly, Mr. Graham's second assignment of error is overruled.
 Judgment affirmed. *Page 12 
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas — Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, JUDGE
COLLEEN CONWAY COONEY, P.J., and MARY J. BOYLE, J., CONCUR
[1] Under R.C. 3105.18(H), in order for a trial court to award attorney fees to a party, it had to find: (1) the other party has the ability to pay the fees; (2) the party seeking fees needs them to fully litigate his/her rights and adequately protect his/her interests; and (3) the fees requested are reasonable.
[2] Although Mr. Graham emphasizes that the trial court ordered him to pay the $15,000 debt, a review of the judgment entry shows that the court ordered him to pay the credit card balance, but then attributed the $15,000 debt to Mrs. Graham and reduced the $20,820 Mr. Graham owed her by that amount. *Page 1