[Cite as *Stratton v. Stratton*, 2019-Ohio-3279.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

NANCY L. STRATTON,                    :

    Plaintiff-Appellee,          :

                                      No. 107798

    v.                                      :

ROBERT B. STRATTON,              :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 15, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-17-368178

---

***Appearances:***

Joyce E. Barrett, and James P. Reddy, *for appellee.*

Robert B. Stratton, *pro se.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Robert and Nancy were married in September 1981. Two sons were born as issue of their marriage, both of whom were emancipated at the time of the divorce proceedings. In August 2017, Nancy filed a complaint for divorce. Robert filed his answer, and the trial court scheduled the matter for trial in July 2018.

{¶ 2} Robert and Nancy agreed to submit the case to the trial court to render its decision based on joint stipulations and joint exhibits, proposed findings of fact and conclusions of law, and a proposed judgment entry from each party. The joint stipulations included retirement assets, checking and savings account statements, joint credit card statements, a medical reimbursement statement, information on COBRA health insurance rates available to Nancy, and a Civil Protection Order in effect until August 2019.

{¶ 3} In September 2018, based on the joint stipulations and joint exhibits, the trial court divided the marital property and granted the divorce.

{¶ 4} Robert now appeals, assigning the following 11 errors for review.

### Assignment of Error One

The judge failed to grant continuance so it could be determined if [Nancy] needed a guardian appointed.

### Assignment of Error Two

The judge failed to delay trial so [Robert] could retain new counsel when his counsel abruptly withdrew on July 25.

### Assignment of Error Three

The judge refused to require [Nancy] to provide [Robert] his personal records so he could submit evidence and prepare his case.

### Assignment of Error Four

The judge refused to clarify whether the restraining order required [Robert] to continue buying Marsh stock.

### Assignment of Error Five

The decision regarding the marital residence was not equitable and totally ignored the housing situation of [Robert].

## Assignment of Error Six

The division of the retirement assets was not equitable considering the health of [Nancy] and [Robert].

## Assignment of Error Seven

[It was] plain error and an abuse of discretion in deciding the marital credit card debt.

## Assignment of Error Eight

[It was] plain error and an abuse of discretion in assigning the entire student loan debt to [Robert].

## Assignment of Error Nine

[It was] plain error and an abuse of discretion in dividing the marital assets and the marital debt when looked at in the totality.

## Assignment of Error Ten

[It was] plain error and an abuse of discretion in considering that [Robert] earned a professional degree during the marriage.

## Assignment of Error Eleven

[There were] many plain errors in the budget report for 2018 and special spousal support is arbitrary, unreasonable and an abuse of discretion.

## Continuance

{¶ 5} We will address the first and second assignments of error together, Robert argues the trial court erred when it failed to grant a continuance to determine if Nancy needed a guardian appointed. Robert also argues the trial court erred when it failed to grant a continuance for him to retain new counsel.

{¶ 6} The decision to grant or deny a motion for a continuance of trial lies within the sound discretion of the trial court. *Kinas v. Kinas*, 8th Dist. Cuyahoga No.

98965, 2013-Ohio-3237, ¶ 28, citing *State v. Lorraine*, 66 Ohio St.3d 414, 423, 613 N.E.2d 212 (1993). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The decision whether to grant a continuance is within the sound discretion of the trial court. *Wielgus v. Wielgus*, 8th Dist. Cuyahoga No. 95214, 2011-Ohio-1569, citing *Hartt v. Munobe*, 67 Ohio St.3d 3, 9, 1993-Ohio-177, 615 N.E.2d 617. We will therefore not reverse the trial court's decision absent an abuse of discretion.

{¶ 7} When determining whether a trial court abused its discretion in denying a motion for a continuance, the reviewing court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to witnesses, opposing counsel, and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and (6) other relevant factors, depending on the unique facts of each case. *Depompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 41, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).

{¶ 8} On July 25, 2018, while acting without an attorney, Robert orally motioned the trial court to continue the trial to determine whether Nancy, who had been in poor health and had recently undergone surgery for glioblastoma, needed a guardian appointed to adequately protect her interest. Nancy was present in court

with counsel, who opposed the motion and in response to the trial court's inquiry, opined that Nancy did not need an appointed guardian. The trial court denied the motion and two days later the parties engaged in the previously mentioned joint stipulations.

{¶ 9} A review of the record reveals that despite Nancy's poor health and recent surgery, she was present in court with counsel, who did not believe a guardian was necessary, and who was prepared to proceed. Granting the continuance so the probate court could determine whether a guardian was needed would have involved an indeterminate delay. As a result, we do not find that the trial court abused its discretion in denying Robert's motion to continue.

{¶ 10} Robert also argues the trial court erred when it denied his motion to continue after his attorney abruptly resigned. However, we find Robert's argument moot.

{¶ 11} The record indicates that Robert's counsel orally motioned the court for a mandatory withdrawal, ostensibly because she had been dismissed. Robert, who had four different counsel while the divorce was pending, indicated that he did not want counsel to withdraw. However, counsel indicated she could not continue on the case. The trial court granted counsel's motion to withdraw.

{¶ 12} Afterward, Robert orally motioned the court to continue the trial so the previously discussed guardianship determination could be made. Two days later, Robert appeared in court with the same counsel, who had withdrawn earlier.

With the aid of their respective counsel, Robert and Nancy submitted joint stipulations and joint exhibits for the trial court's consideration.

{¶ 13} Based on the unfolding of events, in particular counsel's reappearance on the case, Robert's present assertion is moot.

{¶ 14} Accordingly, the first and second assignments of error are overruled.

Personal Records

{¶ 15} In the third assignment of error, Robert argues the trial court erred by refusing to require that Nancy provide him with access to his personal records located in the marital home. Robert argues the sought-after personal records would have helped in his preparation for the case. Robert argues that the inability to get his personal records prevented him from establishing that 20 percent of the Vanguard Retirement Account was acquired before his marriage to Nancy.

{¶ 16} However, the record indicates that Robert and Nancy entered into a consent agreement providing Nancy with exclusive use of the marital home, and providing that Robert could arrange to obtain his personal items from the residence in the company of uniformed law enforcement officers. Therefore, based on the provision of the consent agreement, Robert could have arranged to get his personal records from the marital home.

{¶ 17} Moreover, Robert and Nancy stipulated that the Vanguard Retirement Account was worth $330,661. A stipulation is "a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to avoid the necessity for proof on an issue" or to "narrow the range

of issues to be litigated." *Bodrock v. Bodrock*, 8th Dist. Cuyahoga No. 104177, 2016-Ohio-5852, citing *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, ¶ 12 (8th Dist.). Thus, a stipulation of a fact "remove[s] [the] issue from the litigation," *id.*, citing *McLeod v. McLeod*, 11th Dist. Ashtabula No. 2012-A-0030, 2013-Ohio-4546, ¶ 32, and "renders proof unnecessary," *Rice v. Rice*, 8th Dist. Cuyahoga No. 78682, 2001 Ohio App. LEXIS 4983, 11 (Nov. 8, 2001).

{¶ 18} Once entered into by the parties and accepted by the court, a stipulation is binding upon the parties as "a fact deemed adjudicated for purposes of determining the remaining issues in the case." *Bodrock* at ¶ 19, quoting *Dejoseph v. Dejoseph*, 7th Dist. Mahoning No. 10 MA 156, 2011-Ohio-3173, ¶ 35. As a result of the above stipulation, Robert has waived any error that may have occurred with respect to the Vanguard Retirement Account.

{¶ 19} Accordingly, the third assignment of error is overruled.

<u>Marsh Stock</u>

{¶ 20} In the fourth assignment of error, Robert argues the trial court erred by failing to clarify whether the temporary restraining order required him to continue purchasing Marsh stock in the Morgan Stanley investment account. This argument lacks merit.

{¶ 21} In February 2018, Robert filed an emergency motion to amend the temporary financial orders seeking, among other things, to cease all future direct payments to the purchasing of Marsh stock. Robert also sought permission to liquidate $30,000 of the Marsh stock to pay legal fees.

{¶ 22} In a domestic relations action, a temporary restraining order merges within the final decree, and the right to enforce the order does not extend beyond the decree, unless it has been reduced to a separate judgment or unless it has been considered by the trial court and specifically referred to within the decree. *Brown v. Brown*, 8th Dist. Cuyahoga No. 100499, 2014-Ohio-2402, ¶ 71. *See also O'Brien v. O'Brien*, 8th Dist. Cuyahoga No. 89615, 2008-Ohio-1098, ¶ 83-88.

{¶ 23} The trial court addressed the Marsh stock in the final decree as follows:

> Pursuant to the parties' Joint Stipulations (Joint Exhibit 1), the Court finds that [Robert] has titled in his name a non-retirement brokerage account with Morgan Stanley containing 2255.490 shares of Marsh & McLennan US common stock, with a trial date value of $196,000.
>
> [Robert] argues for the sale of the Marsh stock in the Morgan Stanley account to be used to pay certain marital debts, different from the debts to which the parties stipulated. [Robert] also includes a lengthy discussion about the 2018 federal capital gains rates; but it is unclear how application of those rates would affect these parties.
>
> The Court finds that the Marsh stock has been purchased over time at different values throughout the marriage; and considers that there may be capital gains taxes based on those different values (share price and cost basis) upon sale. The Court finds it equitable to divide (not sell) the Marsh & McLennan stock equally between the parties on a pro rata basis as to acquisition date. Dividing the stock between the parties will permit each of them to exercise control over the timing of any sale and resulting tax liability.

{¶ 24} As seen from the above findings, the trial court considered the temporary restraining order regarding the Marsh stock and specifically addressed it within the final decree. As a result, the temporary order is now merged into the final decree.

{¶ 25} Accordingly, the fourth assignment of error is overruled.

Division of Marital Property

{¶ 26} The remaining assignments of error challenge, in some respect, the trial court's division of the marital property.

{¶ 27} R.C. 3105.171 directs a trial court to equitably divide the parties' marital property. *Rodgers v. Rodgers*, 8th Dist. Cuyahoga No. 105095, 2017-Ohio-7886, ¶ 13. An equitable division of marital property generally involves an equal division of marital property. *Id.* However, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." *Id.*; R.C. 3105.171(C)(1).

{¶ 28} In order to determine what is equitable, the trial court must consider the factors outlined in R.C. 3105.171(F). *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37, citing *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5. Such factors include, among others, the duration of the marriage, the assets and liabilities of the spouses, tax consequences of the property division, and any retirement benefits of the spouses, and "[a]ny other factor the court expressly finds to be relevant and equitable." *Id.*; R.C. 3105.171(F)(1)-(10).

{¶ 29} In the fifth assignment of error, Robert argues the trial court's division of the marital residence was not equitable.

{¶ 30} In the instant case, Robert and Nancy stipulated that the marital home had a fair market value of $159,000, with an outstanding mortgage balance of

$121,000. Based on the parties' stipulations, the trial court found that the equity in the property was equal to $38,000.

{¶ 31} During the pendency of the divorce, Nancy was residing in the home and Robert had no permanent residence, but was staying with a friend. Robert requested that he be awarded sole interest in the home, that he would compensate Nancy for her one-half interest in the equity, and that Nancy would vacate the home by August 31, 2018. Nancy proposed that the home be listed for sale, on or before May 1, 2019, that she be permitted to reside there until that date, and that she would receive one-half of the net proceeds.

{¶ 32} The trial court found Robert's proposal more equitable, except for the date on which Nancy was to vacate the property. To that end, the trial court stated:

> [Robert's] proposal that [Nancy] immediately vacate the marital residence is unreasonable due to [Nancy's] present health. The Court finds, therefore, that [Nancy] should be permitted to continue to enjoy sole use and possession of the marital residence until she elects to vacate same, she dies, or no later than May 1, 2019, at which time [Nancy] should relinquish her interest in said real property to [Robert].
>
> Thereafter, [Robert] shall be awarded the marital residence as his sole property, free and clear of any claim by [Nancy]. [Nancy] will be compensated for her one-half (1/2) interest in the marital residence of $19,000 in the overall division of assets and liabilities.

{¶ 33} Here, the trial court awarded the marital residence to Robert and awarded each party an equal share of the equity in the property. Allowing Nancy to remain in the marital residence until she vacated or died, but no later than May 1, 2019, was equitable under the circumstances. Nancy was gravely ill, had undergone brain cancer surgery during the pendency of the divorce, and, as previously noted,

died in February 2019, while this appeal was pending.  As a result, we see no abuse of discretion in this respect.

{¶ 34} Accordingly, the fifth assignment of error is overruled.

{¶ 35} In the sixth assignment of error, Robert argues the division of the retirement assets was not equitable.  Specifically, Robert argues the trial court failed to consider that Nancy's prognosis indicated that she would pass away prior to June 2019.  Robert further argues that, although sad and tragic, giving half of the retirement assets to Nancy, who would the give those assets to an unrelated third party was not equitable.

{¶ 36} As defined in R.C. 3105.171(A)(3)(a), "marital property" includes "[a]ll interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." *Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, 11 N.E.3d 1119, ¶ 8. *See* R.C. 3105.171(A)(3)(a)(i) and (ii).

{¶ 37} In the instant case, the trial court found that Nancy had no retirement assets accumulated during the marriage.  Robert and Nancy stipulated to having three retirement assets namely: the Vanguard IRA, with a value of $330,661; the Marsh 401(K), with a value of $334,589; and a CNA pension plan in a payout phase, with a monthly benefit of $622.37.  Nancy proposed an equal division of these three assets, while Robert proposed that he be awarded the Marsh 401(K) in full and Nancy be awarded the Vanguard IRA in full.

{¶ 38} However, the trial court found it more equitable and just to divide the Vanguard IRA and the Marsh 401(K) equally, whereby each party would receive approximately $332,625 in funds that could be available without penalty. The trial court awarded Robert the full interest in the CNA pension plan because he was allocated sole responsibility of the marital student loan debt to be discussed below. Under the circumstances, we do not find the trial court's division of the retirement assets, which were amassed during the parties' 36 year marriage, to be an abuse of discretion.

{¶ 39} Accordingly, the sixth assignment of error is overruled.

{¶ 40} In the seventh assignment of error, Robert argues the division of the credit card debt was not equitable.

{¶ 41} A trial court must also take into account the parties' marital debt when dividing marital property. *Turner v. Davis-Turner*, 8th Dist. Cuyahoga No. 106002, 2018-Ohio-2194, citing *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14 (8th Dist.). Marital debt includes any debt that is incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Rossi v. Rossi*, 8th Dist. Cuyahoga Nos. 100133 and 100144, 2014-Ohio-1832, ¶ 62, citing *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 18.

{¶ 42} In the instant case, Robert and Nancy stipulated to having marital credit card debt of $21,000. The trial court found that in February of 2018, the balance had been paid in full, but both parties subsequently charged some of their attorney fees to the credit card. Based on Nancy's lack of income, then health

condition, and anticipated future medical expenses, the trial court allocated the outstanding credit card debt to Robert. However, to be discussed below, the trial court ordered each party to pay their own attorney fees, including the portion that had been charged to the credit card.

{¶ 43} The above division was fair, just and equitable under the circumstances. Thus, we find no abuse of discretion.

{¶ 44} Accordingly, the seventh assignment of error is overruled.

{¶ 45} In the eighth assignment of error, Robert argues it was inequitable to be assigned full responsibility for the debt for the education of their adult children. Robert and Nancy stipulated to having a student loan debt of $31,000 incurred on behalf of their now emancipated sons. Nancy proposed that Robert be held solely responsible for repayment of the loan.

{¶ 46} We have held that student loan obligations undertaken during the marriage for the benefit of a couple's emancipated child should be treated as any other expense of the marriage and, thus, is considered marital debt. *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, citing *Kehoe*, 8th Dist. Cuyahoga No. 97357, 2012-Ohio-3357, at ¶ 16.

{¶ 47} The trial court did find that the repayment of the student loan should be allocated to Robert, but found that Nancy should share in the overall debt by taking a reduced value in other assets. To this end, the trial court did not award Nancy any share of Robert's CNA pension, because he had been allocated sole

responsibility for repaying the marital student loan debt. Based on this offset, we find no abuse of discretion.

**{¶ 48}** Accordingly, the eighth assignment of error is overruled.

**{¶ 49}** In the ninth assignment of error, Robert argues the trial court abused its discretion by not dividing the marital assets and debts equally.

**{¶ 50}** It has long been established that broad discretion is vested in the trial court to determine an equitable property division, because "'the different facts and circumstances which each divorce case presents to a trial court requires that a trial judge be given wide latitude in dividing property between the parties.'" *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 99751, 2014-Ohio-697, quoting *Koegel v. Koegel*, 69 Ohio St.2d 355, 357, 432 N.E.2d 206 (1982).

**{¶ 51}** Our review of the record in the instant case reveals that the trial court considered the factors outlined in R.C. 3105.171(F) in fashioning an equitable division of the parties' marital assets and debts. In the instances where the trial court did not divide the assets and debts equally, the trial court provided its reasoning. In all instances, we found it equitable, fair, and just, under the circumstances.

**{¶ 52}** Accordingly, the ninth assignment of error is overruled.

**{¶ 53}** In the tenth assignment of error, Robert argues the trial court erred by giving weight to the fact that he earned a law degree during the marriage.

**{¶ 54}** R.C. 3105.18(C)(1) sets forth the factors a court must consider when determining whether spousal support is appropriate and reasonable and in

determining the amount and duration of spousal support. The goal of spousal support is to reach an equitable result. *Hloska v. Hloska*, 8th Dist. Cuyahoga No. 101690, 2015-Ohio-2153, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988). And while there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all 14 factors of R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id.* at ¶ 11.

{¶ 55} Among the factors to be considered is:

> "[t]he contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party[.]"

R.C. 3105.18(C)(1)(j).

{¶ 56} In the final decree, the trial court addressed all of the factors that applied to the parties. Regarding R.C. 3105.18(C)(1)(j), the trial court stated:

> Neither party presented documentation specifically addressing this factor, and in-court testimony was waived. However, [Robert] was not licensed as an attorney in Ohio until 1992 — a full 11 years after the marriage. Therefore, this factor will be given weight by the Court.

{¶ 57} There is nothing in the record to indicate how much weight the trial court gave to this factor or anything to suggest that it was given more weight than the other factors. Because the trial court ordered that the spousal support payments continue until the death of either party, and Nancy passed away in February 2019, any perceived error in the trial court's consideration of this factor, is now moot.

{¶ 58} Accordingly, the tenth assignment of error is overruled.

{¶ 59} In the eleventh assignment of error, Robert argues the award of spousal support was arbitrary and an abuse of discretion.

{¶ 60} As discussed in the preceding assignment of error, the trial court considered the statutory factors set forth in R.C. 3105.18(C)(1) and made specific findings to justify the award of spousal support to Nancy.  We also found the issue of spousal support is now moot because of the passing of Nancy.

{¶ 61}  Accordingly, the eleventh assignment of error is overruled.

{¶ 62}  Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
RAYMOND C. HEADEN, J., CONCUR