[Cite as *McLeod v. McLeod*, 2013-Ohio-4546.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| DEBORAH L. McLEOD, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0030** |
| DENNIS J. McLEOD, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2010 DR 417.

Judgment: Affirmed.

*William P. Bobulsky*, William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Jay F. Crook*, Shryock, Crook & Associates, LLP, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Dennis McLeod, appeals from the final judgment entry of divorce that was issued by the Ashtabula County Court of Common Pleas. Previously, this court entered an order on August 20, 2012, remanding the matter to the trial court for lack of a final appealable order. However, upon remand, the trial court entered a final decree of divorce on September 11, 2012. Pursuant to our judgment entry dated

September 21, 2012, it was ordered by this court that appellant's notice of appeal, although premature at the time it was filed on July 20, 2012, should now proceed.

{¶2} The parties were married on August 14, 1999, and had one child as issue of the marriage, Gabriel. At the time of the marriage, appellee, Deborah McLeod, was employed as a caseworker by the Ashtabula County Department of Job & Family Services. Appellant owns and operates a wholesale grocery distribution and sales business knows as Preferred Produce. During the marriage, in 2002, appellee was diagnosed with a variety of health problems, resulting in an eventual determination of permanent disability as recognized by the Ohio Public Employee Retirement System.

{¶3} Appellee filed her petition for divorce on October 12, 2010. Contemporaneous with the complaint was the filing of a petition for temporary child support and spousal support pendente lite. The motion was granted on the same date, awarding appellee temporary support in the following manner: $924.90 per month in child support, $825 per month for the mortgage on the marital home, and $304.56 for the monthly car payment for appellee's vehicle.

{¶4} In January 2012, the matter came before the magistrate for hearing. Both appellant and appellee testified and presented exhibits. Appellee presented evidence that she received monthly disability benefits in the amount of $1,984.26 from which family medical insurance expenses of $373.92 per month were deducted, and that her monthly expenses were $4,305. Appellant presented evidence that due to the impending divorce and the resulting dual living arrangements, as well as the fluctuating nature of his business, he was required to borrow money from a friend, take out a personal loan against his car, and make significant charges to credit cards in order to

2

meet his expenses.  However, for purposes of child support and spousal support, he agreed that the appropriate figure to use as his annual income was $53,000.

{¶5}   At the conclusion of the hearing, the magistrate issued a decision on February 23, 2012, awarding the following support to appellee: child support in the amount of $454.58 per month and spousal support of $1,200 per month, which included the house payment.  It was determined that upon Gabriel's 18th birthday, child support would be eliminated, and appellant's spousal support payment would be reduced to $1,050, which would also include the house payment until appellee moved from the residence on August 31, 2012, as previously stipulated by the parties. Appellant agreed to pay appellee $12,000 for her portion of the equity in the home in exchange for title and possession of the home.   The magistrate further ordered that this grant of spousal support would continue through appellee attaining age 62.

{¶6}   Appellant filed objections, which were heard before the trial court on June 1, 2012.  Subsequent to the hearing, the trial court issued its decision affirming the judgment of the magistrate, including the support awards.  As noted above, due to the trial court's failure to issue a divorce decree, and this matter having already been appealed, it was remanded to the trial court for the issuance of a final decree of divorce and is now ripe for review.  The parties were granted a divorce on the basis of incompatibility.

{¶7}   Appellant raises the following two assignments of error for our review:

{¶8}   "[1.] The trial court committed reversible error by failing to consider the overpayment of support pendente lite as compared to the final decree an asset in the possession of Mrs. McLeod, in failing to consider the benefit she received from the

payment of the mortgage while she lived in the Marital Residence, and abused its discretion in not offsetting the overpayment against the $12,000 Mr. McLeod was ordered to pay as part of the transfer of ownership of the marital residence.

{¶9} "[2.] The trial court abused its discretion in using the $53,000 income value for Mr. McLeod and Mrs. McLeod's monthly budget in determining the award of spousal support as said values were not supported by the facts presented at trial and results in a different outcome when utilizing the factors stated in than would have resulted otherwise."

{¶10} At the outset, we review a trial court's decision regarding spousal support under an abuse of discretion standard of review. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶11} "As this court recently stated, the term 'abuse of discretion' is one of art, 'connoting judgment exercised by a court, which does not comport with reason or the record.' *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 * * * (1925). The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. * * * [W]hen an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that

4

the reviewing court would have reached a different result is not enough, without more, to find error.' *Id.* ¶67." *Sertz v. Sertz*, 11th Dist. Lake No. 2011-L-063, 2012-Ohio-2120, ¶31.

{¶12} Under his first assignment, appellant asks this court to vacate the trial court's judgment for failure to offset the supposed "overpayment" in total support appellant paid to appellee during the pendency of the divorce against the mandated $12,000 payment as part of the division of assets. Appellant also contests the "inflated" value of spousal support granted. Specifically, appellant points to the fact that he paid support under the temporary order for 20 months totaling approximately $2,054.46 per month. However, the final order of support required him to pay $1,658.58 per month, a total disparity of $7,917.60 that constitutes an "overpayment" which should be offset against his $12,000 obligation regarding the equity in the marital residence. In essence, he argues that this "overpayment" should have been considered an asset attributable to appellee, and that the reduced obligations should be treated retroactively to the date of the temporary order in October 2010. We disagree.

{¶13} First, between the time of the temporary order and the final decree, circumstances had changed between the parties. Pursuant to their agreement, appellee's residency in the marital home was to terminate August 31, 2012, with appellant thereupon receiving possession and title to the residence, subject to an obligation to pay a portion of the equity to appellee. Thus, appellant would gain the advantage of a reduced principal balance on the mortgage due to his previous support payments, as well as the benefit of the remaining equity. Accordingly, appellant, as

5

well as appellee, has received a benefit from the house payments that have been made under the temporary order. Second, due to the parties' son's emancipation in June 2012, appellant's child support obligation was scheduled to end.

**{¶14}** The magistrate's decision carefully and specifically reviewed the issue of the retroactivity of spousal and child support modification in her findings and took into consideration the foregoing facts as outlined above. We fail to see how the trial court abused its discretion in failing to make any modification in appellant's spousal support retroactive. Appellant's first assignment of error is without merit.

**{¶15}** Under his second assignment of error, the appellant argues that the trial court erred in awarding spousal support based upon his income of $53,000 and the standard of living figures presented by appellee. He argues the testimony at trial made it clear that both figures were vastly inflated based on the conditions that would exist subsequent to the divorce, and could only be sustained by his repeated borrowing. We disagree.

**{¶16}** During the questioning of appellant during the hearing before the magistrate regarding a proposed settlement that had been discussed during the pendency of the divorce, appellant responded as follows:

**{¶17}** "Q. (Appellant's counsel). Okay, is your business sellable?

**{¶18}** "A. (Appellant) My hope some day is that my son will buy it.

**{¶19}** "Q. Okay

**{¶20}** "A. Because I don't know of anyone else who would be able to buy.

{¶21} "Q. So you were willing to agree to a slightly higher income number when calculating child support and spousal support out of your appreciation from your wife's not making a claim against your business; isn't that correct?

{¶22} "A. I did think that was part of the understanding, yes.

{¶23} "Q. All right. And $53,000 was the number we were throwing around at that time?

{¶24} "A. Correct

{¶25} "Q. Okay. And you still think that would be fair as you sit there?

{¶26} "A. I'm willing to agree to that. Do I think it's a truthful accurate number of how much income the business has? No, I think it's high.

{¶27} "Q. Right.

{¶28} "A. But I am willing to agree to that number.

{¶29} "Q. And are you asking the Court to do that from the time when you filed your objection to the -- to the original order?

{¶30} "A. I am."

{¶31} Appellant contends that both his $53,000 business income figure as well as appellee's living expense figures were inflated and unsupported by the evidence presented, and that the trial court abused its discretion in accepting these figures. Appellant denies that his answers to the above-referenced line of questioning constitute a stipulation regarding his income for purposes of child and spousal support. He claims that the evidence actually demonstrated that his income was in the range of $30,000 to $35,000, and further contends that appellee cited expense figures that were at least $700 above her actual expenses. In sum, appellant argues that the trial court's

7

acceptance of these figures was clearly flawed, and denies that his $53,000 income level was a proposed stipulation between the parties. Specifically, he points to the fact that the actual stipulations between the parties were placed on the record prior to the commencement of the hearing, and that his income level for purposes of child support or spousal support was not included in those stipulations. Appellant maintains that in view of this error in the court's determination of monthly cash calculations, he will be placed in severe financial jeopardy after the divorce, whereas appellee will benefit from a greatly disproportionate cash flow.

{¶32} "A stipulation is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point to avoid the necessity for proof on an issue." *Wilson v. Harvey,* 164 Ohio App.3d.278, 2005-Ohio-5722, ¶12. However, an admission is "a position taken by an adversary, either personally or through an authorized agent, which is contrary to and inconsistent with the contention being made in the litigation. An admission has also been defined as a statement, oral or written, or conduct of a party or his or her representative, suggesting any inference as to any fact in issue, or which is relevant or is deemed to be relevant to any such fact, made by or on behalf of any party to any proceeding." 43 Ohio Jurisprudence 3d, Evidence and Witnesses, Section 258, at 67 (2003). The critical difference between a stipulation and an admission is the dispositive nature of stipulations. Whereas stipulations remove an issue from the litigation, evidentiary admissions must still be weighed against contradictory statements and can be explained away by a party. Robinson Jr., *Old Chief, Crowder and Trials by Stipulation,* 6 Wm. & Mary Bill of Rts. J. 311, 337 (1998), citing 2 McCormick, *Evidence*, Section 254, at 142 (4th Ed.1992).

8

{¶33} Based on the foregoing definition of an admission we fail to see how appellant's responses could be viewed as anything other than an "admission" concerning his income level with respect to the disposition of child and spousal support. Appellant's statement was evidence to be considered in determining his income level; however, his statements did not remove the determination of his income level from the litigation.

{¶34} Furthermore, the magistrate clearly and succinctly set forth the 14 enumerated factors set forth in R.C. 3105.18(C)(1) and her findings as to each of the criteria in determining whether the amount of spousal support is appropriate and reasonable. Moreover, given the Internal Revenue's deductibility of the court's spousal support award sum to appellee, appellant's gross annual income will be reduced from $53,000 to $40,000. Given the addition of this sum to appellee's disability earnings, her gross annual income will be increased to $36,411.12. In short, appellant will leave the marriage with more income than appellee, an established business, better physical and emotional health, and better future income earning prospects.

{¶35} Appellant's second assignment of error is without merit.

{¶36} All of the foregoing findings are supported by the record. The issues of equitable division of property were decided by agreement of the parties prior to the hearing. The award of spousal support was determined by the trial court within its sound discretion based upon consideration of the required statutory factors. Therefore, we conclude that there has been no abuse of discretion or unreasonableness, and that the decisions made by the trial court were based upon its sound review of the evidence with full consideration of the applicable law.

9

{¶37} For the reasons stated in the opinion of this court, appellant's assignments of error are without merit.  It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.